**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Civil Division**

| | |
|---|---|
| **ADELINA C. ROCABRUNA, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: 1:12-cv-506-LMB/TCB** |
| | ) |
| **BANK OF AMERICA, N.A.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**TO COMPEL DEPOSITIONS AND WRITTEN DISCOVERY**

COME NOW the Plaintiffs, by counsel, and in support of their Rule 37(a) motion to compel against Defendant Bank of America, N.A. ("BOA" or "Defendant"), they supply the following memorandum of law. The Plaintiffs respectfully request an Order extending the time for Plaintiffs to complete discovery of BOA evidence from October 18, 2012, to November 8, 2012; providing a three week extension to the deadline for Plaintiffs' Rule 26(a)(3) disclosures; overruling all Defendant's discovery objections; compelling BOA to produce its Rule 30(b)(6) designee(s) without objection; compelling the Defendant to produce for depositions the following witnesses, for which it has not provided contact information by which to serve a deposition notice upon the witnesses: Janet Cleversy and Erlysha Hill,  ACDV operators, and the person most responsible for the management of the Indian ACDV facility; and compelling the Defendant to produce documents and respond to written discovery without limitation.

Plaintiffs certify pursuant to Local Rule 37 that they have attempted to meet and confer with Defendant by phone and in writing to resolve all issues for more than a month.

**OVERVIEW**

This is a Fair Credit Reporting Act (FCRA) case prosecuted against BOA pursuant to 15 USC 1681s-2(b) based upon its failure to conduct the detailed, substantive investigation demanded by the Fourth Circuit's seminal case, *Johnson v. MBNA*. *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 430-31 (2004) (holding that "the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors," that it be "a searching inquiry," not just "superficial, *un*reasonable inquiries by creditors.")(emphasis in original).

Plaintiffs allege, based upon their testimony, bank and account records, an expert opinion and even tape-recorded admissions of BOA employees that the Bank has misapplied their payments to a stranger's account, failed to account for payments made and even refused to cash and accept payments submitted. And then, after Mr. and Mrs. Rocabruna made multiple attempts to obtain correction of BOA's credit reporting inaccuracies, BOA systematically ignored its FCRA obligations to conduct a meaningful investigation and instead used likely low-wage employees in India to quickly reject the Plaintiffs' FCRA disputes.

BOA of course still disagrees. It contends that it accurately reported the disputed account. It contends that its Indian FCRA investigation procedures were appropriate. And it contends that such procedures did not willfully violate the FCRA. But that of course is why this case is litigated. And these disputes are why the Plaintiffs have sought to discover the basis for BOA's denials and evidence to assist in proving this case.

And yet despite the exchange of Rule 26(a)(1) disclosures[1] (including Plaintiffs' multiple supplemental disclosures), the service of Plaintiffs' written discovery and Plaintiffs' now extraordinary efforts attempting to obtain depositions of BOA witnesses, BOA and its counsel

---

[1] The Defendant's conduct regarding its Rule 26(a)(1) disclosures is the subject of another motion before this Court.

have refused to comply with these obligations - the obligations mandated by the Federal Rules and this Court's Orders.  BOA's noncompliance has harmed and prejudiced the Plaintiffs.

## BOA'S FAILURE TO COMPLY WITH ITS DISCOVERY OBLIGATIONS

### I.      <u>Depositions</u>

Plaintiffs have made numerous attempts to take the depositions of Defendant and its employees having knowledge of the facts in this case.  BOA has either explicitly refused to attend and provide its employee testimony or has demanded that Plaintiffs wait until the very end of discovery to take a single deposition of a single employee.  The Plaintiffs' summary is not exaggerated.

### Failure to Produce Janet Cleversy for Deposition

In correspondence dated September 11, 2012, the Plaintiffs requested to depose Janet Cleversy (who was one of two individuals identified in BOA's initial disclosures) the week of September 24th or October 1st and were told by Mr. Pumphrey that he "will discuss this with my client and get back to you." Attached hereto as Exhibit A is a September 11, 2012, email from Defendant's Counsel.

In response to Plaintiffs' repeated requests to take Ms. Cleversy's deposition, on September 21, 2012, the Defendant supplemented their initial disclosures to ***remove*** Ms. Cleversy and substituted Sandra Evans in her place. Defendant now claims that Ms. Cleversy no longer possesses knowledge of any facts in this case, even though Defendant's original disclosures indicated Ms. Cleversy was "familiar with Plaintiff's credit report dispute and reporting history, Plaintiff's payment history and loan applications, and other facts related to the facts of this case." Exhibit B. Despite having identified Ms. Cleversy as an individual likely to have discoverable information in its Initial Disclosures, they refuse to produce her for a

deposition. Defendant's counsel further indicated "[i]t does not appear to be worthwhile to notice someone who will not be testifying. We will move for a protective order if we need to, but this should not be an issue the Court needs to address." Attached hereto as Exhibit C is a September 21, 2012, email between counsel.

Defendant's counsel is correct that this should not be an issue the Court needs to address. However, this is because Rule 30(b)(1) is clear that a party may depose "any person," subject to four exceptions provided in Rule 30(a)(2). *See* Fed. R. Civ. P. 30(a)(2). In fact, one of those exceptions expressly limits a party to 10 depositions in a case without leave of court or stipulation of the parties. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). Defendant is aware of the presumptive 10 depositions permitted under Fed. R. Civ. P. 30, but yet it refuses to provide a deposition date for Ms. Cleversy and threatens that it will seek a protective order. Accordingly, Plaintiffs move for an order compelling Defendant to do exactly what it must do under Rule 30(b)(1) – make Ms. Cleversy available for a deposition.

**BOA Reneges on Agreement to Produce Witnesses for Depositions**

Plaintiffs attempted to identify and depose the individuals who actually conducted the Plaintiff's credit dispute investigations ("ACDV operators"). The Defendant refused to produce those individuals because they are all located in India. On August 14, 2012, Plaintiff's counsel, Mr. Bennett, emailed Defendant's counsel, Mr. Ramana requesting dates for depositions of Defendant's ACDV operators between August 24, 2012 through September 7, 2012. On August 15, 2012, Mr. Ramana responded to Mr. Bennett's email stating "most of [Defendant's] ACDV operators are in India. If we confirm that none of the operators who dealt with your clients' file are located in the United States, they will not be available for depositions in this country. We would be willing to put up a Rule 30(b)(6) witness and do our best to have that deposition occur

on the dates you specified." Attached hereto as Exhibit D are August 14, 2012, emails between counsel. Plaintiffs served notices of depositions of the ACDV operators on August 31, 2012, which were scheduled for September 14, 2012. A copy of the Notices of Deposition are attached as Exhibit E. Plaintiffs also served a Rule 30(b)(6) Notice of Deposition on August 31, 2012, which was scheduled for September 18, 2012. A copy of the Notices of Deposition are attached as Exhibit F. Defendant not only failed to produce a single witness for these duly noticed depositions, but it failed to move for a protective order.

On August 31, 2012, the Plaintiff filed a Motion to Compel the depositions of the ACDV operators. (Docket #27). On September 6, 2012, Ms. Kelly and Mr. Ramana met and conferred *via* telephone to narrow the issues addressed in each parties' brief regarding the upcoming motion to compel. During this conversation, Mr. Ramana stated Defendant will produce *in lieu* of the ACDV operators:

- Sandra Evans in her individual capacity under Rule 30(b)(1);
- the individual in the United States most responsible for supervising the ACDV operators at the Indian facility under Rule 30(b)(1); and
- Rule 30(b)(6) witness.

Immediately thereafter, Ms. Kelly tried to schedule the depositions of these witnesses. A copy of this email correspondence is attached as Exhibit G. In that same correspondence, the parties confirmed this agreement and Mr. Ramana indicated that Defendant intended on filing objections to Plaintiffs' Rule 30(b)(6) Deposition Notice. *Id.* Despite their express agreement to produce these witnesses and their repeated assurances to confirm dates the week of September 24th or October 1st for these depositions, the Defendant have reneged on every agreement and assurance to the Plaintiffs and wholly disregarded their ethical and discovery obligations under the Federal Rules of Civil Procedure and pursuant to this Court's scheduling orders. In addition

to the above-described deposition, Ms. Kelly requested dates for these depositions the week of

September 24th, specifically:

> "[p]lease let us know your availability ASAP so we can notice these depositions.
> The Rocabrunas have more flexible schedules, so they can work around your
> witnesses schedules. The 25th is not longer good for us, but we are doing our best
> to hold the remaining date open."

Mr. Pumphrey responded:

> "I have a call on this with my client this afternoon and hope to have more
> information to you then. Ms. Evans may not be available that week, and if she is
> not, ***I will ensure she is available the following week***…" (emphasis added). *Id.*

*See* Exhibit A.

Ms. Kelly never heard back from Mr. Pumphrey and instead attempted to

schedule the depositions with Mr. Ramana. Rather than sending an email with available

dates, Mr. Ramana wanted to discuss the deposition dates. Ms. Kelly attempted to

reasonably make herself available to these conversations and instead received the

following delay tactics as responses:

> "Can you talk for 5 minutes now?" (at 5:51 p.m.)
> …
> "Sure." (at 5:58p.m)
> …
> "yikes. can't now. 6pm call. how late will you be in the office?" (at 6:00 p.m.)

Attached as Exhibit H is a September 12, 2012, email correspondence between counsel.

> "I'm done bailing on you every time. Can we talk today?"

Attached as Exhibit I is a September 14, 2012 email from Defendant's Counsel.

On September 14, 2012, Defendant provided its objections to Plaintiffs' Rule 30(b)(6)

Notice of Deposition. Despite the fact that Mr. Ramana stated he would work with Plaintiffs,

Defendant objected to 24 of the topics identified in Plaintiff's Notice, and indicated the it would

not produce a corporate designee to testify to Topic Nos. 2, 11, 13, 16, 18, 24 or 25. A copy of

Defendant's Objections to Plaintiff's Rule 30(b)(6) Notice is attached as Exhibit J. Subject to its objections,[2] Defendant indicated that it would produce a corporate designee to answer questions regarding the remaining 17 Topics. In that same email, Mr. Ramana asked Ms. Kelly to "please let me know when we can talk about *finalizing* deposition schedules." (emphasis added) Attached hereto as Exhibit K is a September 14, 2012, email between counsel.

In response, Mr. Bennett stated "Counsel- our deps are noticed, if you want alternate dates, please propose them." *Id.*

Mr. Ramana and Ms. Kelly set up a telephone conference to meet and confer regarding the Defendant's objections. In the telephone conference Mr. Ramana provided October 1, 2, 3 and 10 for Ms. Evans' deposition dates (at this time, Plaintiffs were advised that Ms. Evans would also be the Defendant's Rule 30(b)(6) witness). During this conversation, Ms. Kelly referred Mr. Ramana to a transcript from a recent case before this Court in *Berrios v. Experian Information Solutions*, Case No. 1:11-cv-1130 (E.D. Va. 2011), where Judge Davis found almost every topic on Plaintiffs' Notice to be relevant. Ms. Kelly asked Mr. Ramana to review the transcript and decide whether Defendant would withdraw any of its objections by the end of the day.  After Mr. Ramana failed to provide a follow-up response, Ms. Kelly emailed Mr. Ramana to inquire whether Defendant would withdraw any objections and to confirm deposition schedules. Attached as Exhibit L is a September 20, 2012, email correspondence between counsel. Instead Mr. Ramana stated he cannot commit to a date for Ms. Evans since he doesn't know her availability.[3] *Id.* In addition, the deposition dates of the Plaintiffs and third party witnesses were confirmed for October 4th with little delay or back and forth. *Id.* On September

---

[2] Defendant's objections are boilerplate objections.
[3] In fact, later correspondence from Mr. Ramana reveals that Ms. Evans has been on business travel from the last few weeks.

24, 2012, Defendant indicated the soonest Ms. Evans could be deposed is October 10th. Attached hereto as Exhibit M is a September 24, 2012, email correspondence between counsel.

Lastly, only this week did the Defendant indicate that its Rule 30(b)(1) individual in the United States most responsible for supervising the ACDV operators at the Indian facility is not available until after the discovery cutoff. In response, Mr. Pumphrey suggested *the Plaintiffs* file a motion for a three-week extension of discovery and the Defendant will not object so long as the motion is "not based on or allude to any alleged misconduct or improper delays by the Bank." Attached hereto as Exhibit N is a September 25, 2012, email correspondence between counsel.

### BOA Refuses to Provide Contact Information for Non-Management Employees

Since the Defendant has obstructed and opposed every avenue the Plaintiff has utilized to diligently conduct discovery in this matter, it is no surprise that despite Defendant's refusal to produce any of these employees for depositions, the Defendant also refuses to provide any contact information so that the Plaintiffs can identify the witnesses themselves. In, fact, Defendant has explicitly refused to produce this information *via* email and through the meet and confer process. Attached hereto as Exhibit O is a September 14, 2012, email correspondence between counsel.

## II.     Written Discovery

On August 21, 2012, Plaintiffs served Interrogatories and Requests for Production of Documents on the Defendant. On September 7, 2012, Defendant provided its objections to the Plaintiffs' discovery requests. Exhibit P. The Defendant did not provide a privilege log. To this day, the Defendant has not provided any privilege log. In addition to its boilerplate objections, Defendant objected to all but one of Plaintiffs' interrogatories. *Id.* Of Plaintiffs' thirty Requests for Production of Documents, the Defendant objected to all but three. *Id.* On September 25,

2012, Defendant provided their discovery responses. Exhibit Q. As outlined in this brief, the responses lacked any meaningful substance. On September 26, 2012, the parties met and conferred regarding the discovery responses. The substance of the telephone call is summarized in the September 26, 2012, email from Mr. Guzzo attached as Exhibit R. Based on the Defendant's responses it is unclear if the Defendant has even ascertained what relevant documents it has in its possession, custody and control. Mr. Ramana's response after the meet and confer is merely to check to see if his client has responsive documents. Attached hereto as Exhibit S is a September 27, 2012 email from Mr. Ramana.

## PROOF AT TRIAL

The Defendant improperly withholds its answer to interrogatories, refuses to produce requested documents, and refuses to produce a corporate designee to testify to certain topics based on general and amorphous objections including that the discovery is not relevant, is unduly burdensome or protected by privilege, though not described in its privilege log.

In this case, there are four primary issues that are to be litigated:  (1.) Accuracy – whether the disputed information reported by Defendant to the CRAs was accurate and complete; (2.) Liability – whether Defendant violated the FCRA, 15 U.S.C. 1681s-2(b) by the manner in which it conducted the required investigations or responded back to the CRAs after each dispute; (3.) Willfulness (Recklessness) – whether Defendant intended its conduct or recklessly permitted the conduct; and (4.) Damages – once liability is established, determining the Plaintiff's unliquidated and liquidated actual damages and if the violation was also willful, this includes the appropriate amount of punitive damages.  The answers to interrogatories and production of documents that have been withheld from Plaintiffs focus on liability, willfulness and punitive damages. Counsel have met and conferred on several occasions and there remains a large divide.

## DEFENDANT'S SPECIFIC DISCOVERY DEFICIENCIES

### A.   VIOLATION OF FEDERAL RULE 33(d)

Nearly half of Defendant's responses to Plaintiffs' interrogatories stated "that the answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing BOA's business records…." *See* Def.'s Interrogs. 2-7. This is a boldface abuse of Rule 33(d)'s option to produce business records. Fed. R. Civ. P. 33 (c). Subdivision (d) does not allow a respondent to refer to a mass of records. *See* Fed. R. Civ. Pro 33 Advisory Committee's Note (stating "The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records…. [s]uch practices are an abuse of the option). The express language of the rule requires that the specification "shall be in sufficient detail to permit the interrogating party to locate and to identify… the records from which the answer may be ascertained." *Id. See, e.g., Taube Corp, Inc. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 455 (W.D.N.C. 1991).

This Court's opinion in *Saleh v. Moore* is also instructive. The Court granted sanctions twice in that matter and specifically criticized the Defendant's vague referral to business records under Fed. R. Civ. P. 33(d) stating:

> Also, the Defendants inappropriately invoked the option to produce business records under Fed.R.Civ.P. 33(d) by failing to make an adequate specification as required by the rule, by using it to avoid answering hard questions, and by dumping large volumes of unindexed documents on the Plaintiffs. The Plaintiffs incurred substantial attorneys' fees and expenses in a good faith effort to search the proffered records, in compelling the Defendants to provide proper answers to the interrogatories once counsel concluded the answers would not be discerned by examining the tendered records, and in seeking and receiving sanctions which finally produced answers.

*Saleh v. Moore,* 95 F.Supp.2d 555, 561 (E.D.Va. 2000)(J. Payne).

Presently, Defendant cannot establish that the burden of compiling BOA's history of communications in the case is "substantially the same" between the two parties. Further, Defendant has not identified the specific documents and pages that it claims provide this information.

### B. Plaintiffs' Discovery Requests Relating to Liabilty Evidence: FCRA Investigation Procedures

The liability issues in this case focus on these claims: whether (1) the derogatory information reported by Defendant to the CRAs was accurate; (2) whether Defendant's ACDV investigations were reasonable; and (3) whether Defendant provided incomplete and inaccurate responses back to the credit bureaus after Plaintiffs made the ACDV disputes. The core issue in this case is whether or not BOA conducted a detailed and meaningful investigation when it received the "ACDV" dispute forms from the Big-3 CRAs. BOA has opposed Plaintiffs' attempts to learn the actual identities of the employees who handled these disputes. In fact, BOA states that its procedures are all that will matter as the employees do not recall anything specific about the Plaintiffs' disputes. *See* Def.'s Mot. PO 6 (stating "[t]hese employees investigate credit disputes regarding several BOA customers every day, and have no specific recollections of their investigations into the Rocabruna's credit disputes performed over the last two years."). On September 26, for the first time in this case, BOA disclosed and produced documents. And yet, despite producing approximately 2,300 pages of random policies, it has still refused to provide the names and addresses of its ACDV operators and the procedures actually used by its employees to conduct FCRA disputes. In fact, Plaintiffs' counsel knows that these were available and not produced because they were discussed in the miscellaneous documents BOA DID produce. Specifically, the documents produced by Defendant indicate "Refer to the

AS400(iSeries) procedure," "Access the Credit Reporting Procedure Portal," "Refer to the Credit Reporting Maintenance Screen-Adjust Credit Report procedure."

Plaintiff has asked for these in INTS 1, 7, 10, and in RFPS 9, 11, 12, 13, 22, 24, 26. These were also the subject of multiple 30(b)(6) Topics, including 14, 15, 24,.

### C.    Evidence BOA's Violation was "Willful"

#### i.    BOA's Notice

Plaintiffs allege that BOA's violation of the FCRA was "willful." The standard for willfulness under the FCRA includes not only knowing or intentional violations, but also violations in conscious disregard of the law. *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007). Proof of willfulness is almost always a question of fact and thus depends greatly on the evidence of Defendant's notice and knowledge. *See Mullins v. Equifax Info. Servs.*, LLC, 2007 U.S. Dist. LEXIS 62912, *7-8 (stating "the jury reasonably could have inferred that TU has chosen to disobey the FCRA's reinvestigation and related provisions because it is less expensive to do so, even if it loses a few cases, than it is to comply with the statute."). The Plaintiff has requested, but the Defendant has not produced, the documents related to Defendant's procedures for complying with the FCRA, including:

- Knowledge of governing legal requirements;
- Previous lawsuits that provided notice;
- Changes made to comply with the law;
- Internal reviews and discussions of investigation procedures;
- Email communications regarding FCRA compliant investigation procedures.

All of this information is discoverable as it can establish for the jury Defendant's willfulness under *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007); *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).   In *Levine*, the Eleventh Circuit

actually just restated the Supreme Court's *Safeco* standard.  *Id.*  It has been held that the Safeco standard actually reduces the Plaintiff's willfulness burden:

> *Safeco* changed the standard previously applied in the Fifth Circuit, pursuant to which a defendant could have been found in willful noncompliance under § 1692n only if it " 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' " *Stevenson v. TRW Inc.,* 987 F.2d 288, 293-94 (5th Cir.1993) (quoting *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), cert. denied, 483 U.S. 1022 (1987)); *see also Harris v. Equifax Info. Servs., LLC,* No. C A 606CV-01810-GRA, 2007 WL 1862826, at *2 (D.S.C. June 26, 2007) ("In Safeco, the Supreme Court unequivocally resolved this circuit split, holding that willfulness under 15 U.S.C. § 1681n(a) covers a violation committed in reckless disregard of Plaintiff's rights.").

*Robertson v. J.C. Penney Co., Inc.*, No. 2:06CV3-KS-MTP, 2008 WL 623397, at *9 (S.D. Miss. Mar. 4, 2008).   While in many circuits, the courts had previously required "knowing or conscious disregard," *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001), or even "willful concealment," *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001), the post-*Safeco* standard included "recklessness." *Levine*, 554 F.3d at 1318.  Plaintiff is entitled to evidence that establishes Defendant's level of recklessness or willfulness in its disregard of Plaintiff's rights under the FCRA.

Plaintiffs have sought evidence related to willfulness and to punitive damages and in response BOA has entirely refused discovery. One type of proof of notice is the Defendant's previous receipt of other complaints alleging similar violations of 15 USC 1681s-2(b).  The Fourth Circuit has held relevant to a willfulness determination the question of whether or not there is "evidence that other consumers have lodged complaints similar to" the plaintiff in this case. *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Moreover, other cases in the

Eastern District of Virginia have found that the existence of prior lawsuits alleging violations of § 1681s-2(b) is not only *discoverable*, but may be an important factor to a jury's determination of whether or not violations of the FCRA were willful. The same evidence was ordered produced in this District by Judge Payne in *Faile v. Equifax Info. Servs., LLC, (3:06cv617)* and by Magistrate Judge Dohnal in two FCRA cases, *Dorsey v. Sallie Mae, et al.,* (3:05cv337) (against Select Portfolio Servicing) and *Alabran v. Capital One Bank,* (3:05cv935).   Not only is evidence of prior complaints relevant to the question of willfulness under 15 U.S.C. §1681n, it is also relevant to the question of notice for simple negligence.

In another Eastern District of Virginia case, *Grizzard v. M.B.N.A.*, Judge Williams denied defendant's motion *in limine* to exclude other litigation[4] evidence, explaining:

> "The defendants' motion *in limine* to exclude testimony and evidence regarding other litigation is denied in part and granted in part. The Court will limit such testimony and evidence regarding other litigation. I will not permit unfettered use of evidence from any other cases as that would complicate the trial and confuse the jury. However, some evidence, such as the complaint and the Fourth Circuit's opinion in the Johnson case, **and other evidence that would be relevant to the issue of the defendants' actual notice that their procedures were unreasonable or violated the Fair Credit Reporting Act will be relevant to show notice, knowledge, or willfulness and will not be excluded**."

*Dalton* has not shown, for example, *(1.)* that CAI was aware that its subvendors relied upon informal legal opinions from court clerks; *(2.)* There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI; and *(3.)* Indeed, CAI had used

---

[4] *See Also* the attached excerpt from *James v. Gilber Encore Group, Inc.*, Case No. 3:11-cv-221, stating defendant's objection to producing previous litigation was overruled and ordering it to produce "a copy of each comply filed in every lawsuit in which it's been sued for an alleged violation of 15 U.S.C. §1681…." Exhibit W.

SafeHands for about a year and had found the firm to be reliable. *Id*. at 418. *(numbering added)*. Further, CAI corrected its mistake one day after Dalton challenged the accuracy of the report. *Id*.

More recently, in *Mullins v. TransUnion*, Judge Payne considered an almost identical argument (though in a different posture) that now presents itself in this case.  At the Final Pre-trial Conference, the FCRA Defendant, TransUnion, sought to prevent the consumer's use of previous lawsuits and court decisions criticizing that Defendant's investigation procedures. Judge Payne rejected such an attempt and in doing so provided a concise and complete explanation of the purpose of such evidence:

> THE COURT:  All right.  I think the information that Trans Union got a message from a court that told it its investigative procedures were inadequate is relevant.  I don't think it's prejudicial because it is notice that the investigative procedures were relevant. […]
>
> THE COURT:  Cushman says you can't parrot information given you by the bank.
>
> MR. LUCKMAN:  Under some circumstances.
>
> THE COURT: Period.  That's it.
>
> MR. LUCKMAN:  It says "under some circumstances."
>
> THE COURT:  Look, it's time that you-all came to realize that **when a Court tells you something, you have got to realize it, accept it, and do something about it. If you don't, you're in trouble.  It's time that your client understood that, and that's what he's trying to prove.  And if you don't do it, you get punished for doing it.  That's just the way life is.**

*See* Transcript of Final Pretrial Hearing, *Mullins v. Trans Union*, Case. No. 3:05-cv-888, 84-85 (E.D. Va. Jan. 31, 2005). A copy of the transcript is attached hereto as Exhibit T.

More recently, Judge Davis confronted these precise deposition topics in *Berrios v. Experian Information Solutions*, Case No. 1:11-cv-1130 (E.D. Va. 2011). In *Berrios*, defendant

filed a protective order after receiving plaintiff's Rule 30(b)(6) deposition notice, which contained virtually identical topics to the Notice in this case. A copy of Ms. Berrios's Rule 30(b)(6) Deposition Notice is attached hereto as Exhibit U. After a hearing on the protective order, Judge Davis ruled that nearly every topic on Ms. Berrios's notice was relevant except for Topic Nos. 5, 13, and 16.[5] A copy of this hearing transcript is attached hereto as Exhibit V. Despite being provided with copies of Ms. Berrios's deposition notice and a transcript of the February 17, 2012 hearing on the protective order, Defendant has refused to withdraw any of its relevancy objections. Instead, Defendant's counsel stated that "the *Berrios* authority you provided appeared to support our position on objections."

It is also important to highlight that in *Mullins*, *Williams* and *Berrios*, the Court was considering whether or not evidence of prior complaints and decisions was relevant and thus admissible. Presently, the Court is faced with an even easier question – whether such information is even discoverable. It certainly is and should be compelled.

Accordingly, Plaintiffs have requested such information in Interrogatories 1, 7, and 9. Rule 30(b)(6) Topic Nos. 2, 3, 5, 7, and 24. BOA has refused discovery on these topics.

### ii. Net Worth

The Plaintiff has alleged a punitive damages claim under the FCRA. 15 U.S.C. §1681n. Defendant's net worth and financial information is directly relevant to this claim. This information is necessary to determine a proper amount of punitive damages. In fact, in its most recent FCRA case, litigated under the same statutory section as in the present case, the Fourth Circuit stated:

---

[5] As detailed below, Plaintiffs' counsel believes these topics are still relevant, or, at the very least, reasonably calculated to lead to admissible evidence. Moreover, the *Cushman* and *DiPrinzio* decisions were not brought to the attention of Judge Davis.

We also conclude that a smaller award would not "serve as a meaningful deterrent" to BB & T. *Kemp,* 393 F.3d at 1365. As the court noted in *Bach,* "a punitive damages award must remain of sufficient size to achieve the twin purposes of punishment and deterrence." 486 F.3d at 155 (quotations and citations omitted). This is not to say that a $400,000 punitive damages award would be appropriate in this case, as it was in *Bach.* But reducing the punitive damages award of $80,000 here would leave little deterrent or punitive effect, particularly given BB & T's net worth of $3.2 billion. *See, e.g., TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 462 n. 28, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality opinion) (noting that it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages").

In addition to the *Saunders v. B.B. & T.* case tried by present Plaintiff's counsel, net worth and financial information has been used in every FCRA trial in this District, including in the *Johnson v. CHASE* trial before Judge Williams.

Accordingly, the Court should compel Defendant to provide this information.

### iii.    Whether or not BOA's Dispute Handling System is Reasonable

In a FCRA case like this one, the core issue is the reasonableness of the procedures used by the Defendant to "investigate" the Plaintiffs' disputes. Factors that have been considered by juries when determining the reasonableness of FCRA procedures are:

      -hourly pay

      -quotas

      -how its employees are trained

      -how they are evaluated

      -audits of their work

      -incentive systems for speed

      -work conditions

-how much money is spent by BOA per dispute on average

-how much time is spent

At trial, Plaintiffs will argue that the "investigation" was superficial and did not devote sufficient time and resources to obtain a reasonable and proper outcome.  See e.g. *Johnson v. MBNA*, 357 F.3d 426, 430 (4th Cir. 2004) ("The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed.2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry"). Thus, the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.")  At trial in *Johnson*, present Plaintiff's counsel presented evidence that MBNA used a quota system that required a small number of employees to process a huge number of disputes in a given hour.  They were paid accordingly.   This type of evidence – requested through the challenged Interrogatory – is relevant to establish the unreasonableness of the FCRA defendant's investigation procedures. *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3rd Cir. 1997).[6]

In *Cushman*, the Court applied the "cost of investigation v. cost of harm to consumer" standard later adopted by the Fourth Circuit in *Johnson v. MBNA*.  *Johnson v. MBNA America Bank, N.A.* 357 F.3d 426, 432-433 (4th Cir. 2004).  One of the facts that the *Cushman* decision found important was that for the CRA, Trans Union, "investigations are performed by clerks paid $7.50 per hour and who are expected to perform ten investigations per hour."  *Cushman v. Trans Union Corp.*, 115 F.3d at 222. *See also*, *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) (applying conventional agency principals to FCRA impermissible pull case); *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir 2008) (Experian

---

[6]   *Cushman* has been expressly adopted by the United States Court of Appeals as the law in the Fourth Circuit. *Johnson v. MBNA America, N.A.* 357 F.3d 426, 432 (4th Cir. 2004).

unreasonably relied on third party vendor to perform its investigation of public records inaccuracy); and "[a]n employer is liable for negligence in failing properly to instruct employees, or failing to assure that the instructions are obeyed." 30 C.J.S. Employer—Employee § 205.

This issue was also addressed in *DiPrinzio v. MBNA Am. Bank*, which is now a wholly owned subsidiary of Defendant. 2005 U.S. Dist. LEXIS 18002 (E.D. Pa. 2005). In this case, MBNA sought to preclude evidence *at trial* referring to the number of disputes per hour processed by MBNA's employees on the grounds that such evidence is wholly irrelevant. *Id*. at 33. Defendant further argued any evidence of disputes per hour processed by MBNA "has no bearing on the amount of time taken to process plaintiff's specific disputes." *Id*. The court rejected this argument on two bases and explained as follows:

> "First, the information is directly relevant under 15 U.S.C. § 1681s-2(b)(1), which states that a creditor must conduct an investigation of a consumer's disputes… Although the Act does not define the level of investigation required, numerous courts have agreed that section 1681s-2(b)(1)'s investigation requirement for furnishers of credit information "is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report." *Evantesh v. G.E. Capital Mtg. Svcs., Inc.*, 2003 U.S. Dist. LEXIS 23131, Civ. A. No. 02-1188, 2003 WL 22844198, *6 (E.D. Pa. Nov. 25, 2003) (*citing Bruce v. First U.S.A. Bank, National Assoc.*, 103 F. Supp. 2d 1135, 1143 (E.D. Miss. 2000). Therefore, furnishers of credit are required to conduct a "reasonable investigation." Id. *See Johnson v. MBNA Bank, N.A.*, 357 F.3d 426, 432-433 (4th Cir. 2004) (furnisher of credit information must conduct reasonable investigation of consumer's dispute). To determine reasonableness, courts have applied an analysis weighing "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information." *Id*. (*citing Cushman v. Trans Union Corp*., 115 F.3d 220, 225 (3d Cir. 1997)). Thus, the number of disputes processed by MBNA per hour goes directly to that analysis by providing a basis for the cost of the investigation to plaintiff. *See Cushman*, 115 F.3d at 222, 225 (fact that agency paid its clerks $ 7.50 per hour and expected them to perform ten investigations per hour was relevant in cost-benefit analysis to determine whether particular investigation was reasonable).

> To the extent defendant argues that jury will be improperly misled into believing that its average dispute-processing time is representative of the time spent on

plaintiff's dispute, its argument disregards well-established a fundamental principle of the Federal Rules of Evidence. Rule 406 states as follows:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

FED. R. EVID. 406. Pursuant to this rule, evidence that MBNA routinely processed an average of 24 disputes per hour is relevant to prove that MBNA acted in conformity with regards to plaintiff's disputes, processing it in an average time of two and a half minutes. The burden then falls on defendant at trial to prove that it varied from its standard practice with regards to plaintiff's case. Accordingly, the Court denies the motion *in limine* on this point.

Plaintiffs' requests to seek to discover the information considered in *Johnson*, *Cushman*, *DiPrinzio*, regarding the number of BOA employees who actually perform investigations and other factual details regarding where and by whom these employees are supervised and incentivized.

## CONCLUSION

Nearly every written discovery request and Topic on Plaintiffs' Notice has been the subject of comparable discovery or trial motions in this District.  Plaintiff asks the Court to Order production or, when appropriate, exclusion of the information and comments sought in the following requests. The Plaintiff seeks the Court's order deeming the Defendant's objections to be waived and ordering production of the discovery under Fed. R. Civ. P. 37(a) outlined herein. Otherwise, the Plaintiff seeks the sanctions permitted under Fed. R. Civ. P. 37(c)(1).

WHEREFORE, the Plaintiffs, by counsel, hereby moves this Court for the relief outlined in their Motion to Compel and for any such relief the Court deems proper.

Respectfully submitted,
ADELINA AND MIGUEL ROCABRUNA

By _____/s/_____
                              Of Counsel

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB # 82170
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone: (703) 277-9774
Facsimile: (703) 591-9285
Email: kkelly@siplfirm.com
Email: aguzzo@siplfirm.com

Leonard A. Bennett, VSB # 37523
Susan M. Rotkis, VSB # 40693
CONSUMER LITIGATION ASSOC., P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document

has been filed in the CM/ECF system, which shall electronically forward it to the following on

this the 28th of September, 2012, as follows:


Anand Vijay Ramana                       Brian Emory Pumphrey
McGuire Woods, LLP                       McGuireWoods LLP
2001 K Street NW                         901 E Cary St
Suite 400                                Richmond, VA 23219-4030
Washington, DC 20006-1040                Email: bpumphrey@mcguirewoods.com
E-mail: aramana@mcguirewoods.com


                            /s/
_____
                    Kristi C. Kelly, Esq.,
                Virginia State Bar No. 72791
        SUROVELL ISAACS PETERSEN & LEVY PLC
              4010 University Drive, 2nd Floor
                    Fairfax, VA 22030
              Telephone: (703) 277-9774
               Facsimile: (703) 591-9285
              Email: kkelly@siplfirm.com
                  *Counsel for Plaintiffs*