1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-----------------------------------:
                                   :
SANDRA J. BERRIOS,                 :
                Plaintiff,         :
                                   :
    -vs-                           :      Case No. 1:11-cv-1130
                                   :
                                   :
EXPERIAN INFORMATION SOLUTIONS,:
INC, et al.,                       :
                Defendants.        :
                                   :
-----------------------------------:
```

HEARING ON MOTIONS

February 17, 2012

Before:  Ivan D. Davis, Mag. Judge

APPEARANCES:

Kristi C. Kelly and Matthew J. Erausquin,
Counsel for the Plaintiff

George E. Kostel, Counsel for Defendant Flagstar

EXHIBIT

V
_____

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 2 of 30 PageID# 1025
Case 1:12-cv-00080-CMB-FCB   Document 33-22   Filed 03/28/12   Page 2 of 30 PageID# 660

2

1                    NOTE:   The case is called to be heard at 10:52 a.m.

2     as follows:

3                    THE CLERK:   Berrios versus Experian Information

4     Solutions, Incorporated, et al., case number 11-cv-1130.

5     Parties please identify yourselves for the record.

6                    MR. KOSTEL:   Good morning, Your Honor.   George Kostel

7     on behalf of Flagstar Bank.

8                    THE COURT:   Good morning.

9                    MS. KELLY:   Good morning, Your Honor.   Kristi Kelly

10    on behalf of Sandra Berrios.

11                   As a preliminary matter, we have two individuals we

12    would like to move for admission into this court before Your

13    Honor.

14                   MR. ERAUSQUIN:   Good morning, Judge.   Matthew

15    Erausquin for the plaintiff.   I am an attorney licensed to

16    practice before this court.   I would like to introduce Janelle

17    Mason, she is an attorney in my office.

18                   THE COURT:   We move admissions at the podium.

19                   MR. ERAUSQUIN:   I would like to introduce Janelle

20    Mason, she is an attorney in my office, duly licensed to

21    practice in the Commonwealth of Virginia.   She is of great

22    moral character, I have known her for many years.   We move her

23    admission this morning.

24                   THE COURT:   Is there an application?

25                   Ms. Mason's application appears to be in order.   The

Case 1:11-cv-01130-AJT-IDD Document 75 Filed 02/29/12 Page 3 of 30 PageID# 1036
Case 1:12-cv-00800-LMB-TCB Document 39-22 Filed 09/28/12 Page 3 of Page#ID# 1561

3

1    motion will be granted.  Can we provide her the oath of

2    admission.

3              NOTE:  Attorney Mason is sworn.

4         THE COURT:  And who is the second individual?

5         MS. KELLY:  Your Honor, I would like to move Andrew

6    Guzzo into the practice before this Court.  He is an associate

7    of Surovell Isaacs Petersen & Levy, he is a graduate of

8    Washington & Lee University, and he clerked for our law firm

9    prior to joining as an associate this year.

10        THE COURT:  Mr. Guzzo's application likewise appears

11   to be in order.  Motion is grant.  Provide him the oath for

12   admission as well.

13             NOTE:  Attorney Guzzo is sworn.

14        THE COURT:  Ms. Mason and Mr. Guzzo, the Court

15   welcomes you to the Eastern District of Virginia.  I am sure

16   your counsel has informed you or your colleagues have informed

17   you, we're more fondly known as the Rocket Docket.  Look

18   forward to seeing you in the courtroom.

19        MS. MASON:  Thank you.

20        MR. GUZZO:  Thank you, Your Honor.

21        MR. KOSTEL:  Good morning again, Your Honor.  There

22   are two parts to my motion this morning.  One is the location

23   of the Flagstar depositions, and the other is whether subpoenas

24   are required as to the low level employees.

25             I take your admonition very seriously.  I have

4

1   nothing to add to my papers unless you have questions for me.

2          THE COURT:  Well, the Court does have a question.  It

3   appeared based on a reading of the responses to the motions

4   that the plaintiffs were in agreement that these depositions

5   should be taken in Michigan, is that correct?

6          MR. KOSTEL:  That's the way I read it too, Your

7   Honor, and I was just asking for a reissued notice that

8   confirmed that so there wouldn't be any debate down the road

9   when the letters and the e-mail correspondence got mixed in

10  with the notice of deposition.  I didn't want them to be able

11  to argue that we had somehow consented to a notice of

12  deposition in Virginia.  I just don't think it's proper.

13         I am entitled to a proper notice.  I am entitled to

14  be able to respond to it.

15         THE COURT:  All right.

16         MR. KOSTEL:  The same argument with the subpoenas.  I

17  think that is, that is something they do argue, but we can

18  address that after we hear from them.

19         Thank you, Your Honor.

20         MS. KELLY:  Good morning, Your Honor.  I will just

21  briefly address the issue of the location of the depositions.

22         In Mr. Bennett's e-mail in response to Mr. Kostel's

23  letter we said it would be no problem to take them by

24  telephone.  In that same e-mail we asked for dates, since he

25  also objected to the dates of the deposition, so that we could

Case 1:11-cv-01130-AJT-IDD  Document 75  Filed 02/29/12  Page 5 of 30 PageID# 1028
Case 1:12-cv-00606-MBFCGB  Document 33-22  Filed 03/28/12  Page 6 of 31 PageID# 563

5

1    reissue the notice for dates that were more convenient to him

2    so long as they were within a couple weeks.

3         We never received a response to that, so we didn't

4    reissue any notices.  And two days later he filed this motion

5    for a protective order.

6         So, we're happy to work with him on dates and issue

7    appropriate deposition notices once we determine dates that are

8    acceptable.

9         THE COURT:  All right.  Well, that portion of the

10   motion is granted.  Obviously, there is a presumption that

11   those 30(b)(6) motions and things be conducted in the area or

12   in the state or district in which corporate headquarters are

13   located.

14        So, let's move on to the second part of the motion.

15        MR. KOSTEL:  Part two, Your Honor, is the subpoenas

16   as to the low level employees.  Rule 30(b)(1) allows for

17   depositions of officers, directors and managing agents of a

18   corporation.  If an employee is not one of those things, a

19   subpoena is required.

20        The du Pont case issued out of this court recently

21   makes clear that to be a managing agent--  First of all, there

22   is no question they are not officers or directors, we all agree

23   on that.  du Pont makes clear that they have to manage someone.

24        These are customer service representatives.  They

25   don't manage anyone.  They answer the telephone and respond to

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 6 of 30 PageID# 1029
Case 1:12-cv-00806-MBB-FCB   Document 33-22   Filed 09/28/12   Page 6 of 30 PageID# 564

6

1   customer inquiries, that's all they do.  And there has been no

2   evidence to the contrary proffered by the plaintiffs.  So,

3   therefore, we need subpoenas to compel their attendance in

4   Michigan where they reside.

5        Thank you.

6        MS. KELLY:  It's our position that the 30(b)(1)

7   depositions of the ACDV employees are considered managing

8   agents.  An ACDV employee processes the credit dispute which is

9   the subject of this action that Ms. Berrios has filed before

10  the Court.  A dispute comes from the credit reporting agencies.

11  The ACDV operator receives the dispute, investigates based on

12  the corporation's policies and procedures using different

13  documents in their possession, and uses their discretion to

14  make a decision as to whether the dispute is proper, whether to

15  verify the dispute, whether to correct the dispute, or whether

16  to update the dispute, and sends that information back to the

17  CRAs, the credit reporting agencies.

18        And so, for--

19        THE COURT:  They have to exercise their judgment and

20  discretion concerning corporate matters.

21        MS. KELLY:  Right.  And their--

22        THE COURT:  Every employee exercises their discretion

23  and judgment in some form or another.  A janitor exercises his

24  discretion whether or not he is going to mop the floors at 7 or

25  7:30.  That doesn't make, if he is a janitor for a company,

Case 1:11-cv-01130-AJT-IDD Document 75 Filed 02/29/12 Page 7 of 30 PageID# 1030
Case 1:12-cv-00088-LMB-TCB Document 33-22 Filed 09/28/12 Page 8 of 30 PageID# 565

7

1   doesn't make him a managing agent of that company, does it?

2       MS. KELLY:  No, it doesn't, but these employees are

3   exercising discretion in relation to their employer's policies

4   and procedures regarding the credit disputes.

5       They are also considered party witnesses because the

6   validity of their dispute, the reasonableness of their

7   investigation is the exact issue that's the heart of this

8   litigation.  They are considered party witnesses, and this was

9   addressed in the Wilkes matter before Judge Jones recently, and

10  he considered them party witnesses.

11      They are managing agents.  The factors to consider

12  are whether they invested discretion in the exercise of

13  judgment.  And they clearly do.  They look at the disputes,

14  they refer to database documents in their system, and they use

15  the policies and procedures of their employer to determine

16  whether an investigation should result in changing the

17  information or not.

18      And this is analogous to the Tomingas case that we

19  cited in our brief.  In that case there were two low-level

20  employees who were sent to investigate a crash site.  They went

21  to the site to obtain information about particles that were

22  left after the crash of the airplane.

23      Those employees were determined by the Court to be

24  managing agents even though they weren't an officer or director

25  because they had to determine what was relevant evidence and

Case 1:11-cv-01130-AJT-IDD  Document 75  Filed 02/29/12  Page 8 of 30 PageID# 1031
Case 2:12-cv-00066-MB-FCB  Document 39-22  Filed 09/28/12  Page 8 of 30 PageID# 566

8

1    what wasn't.

2            It is analogous to the ACDV operators because they

3    received the disputes from the credit bureaus.  They are the

4    only individuals that process them.  They don't confer with

5    other employees.  They get the dispute and they determine based

6    on their judgment, knowing their employer's policies and

7    procedures, whether it's relevant or not.

8            And so, we would submit that it's exactly analogous

9    to the Tomingas case.  And under the standards in the du Pont

10   case, they exercise discretion, they are required to carry out

11   their employer's instructions, and their interests are clearly

12   aligned with their employer versus Ms. Berrios.

13           It's doubtful that the defendant would allow us to

14   contact them directly.  And it is even more doubtful that the

15   defendant wouldn't defend their depositions.

16           And for these reasons, we would submit that they're

17   clearly managing agents.

18           Thank you.

19           MR. KOSTEL:  Just 30 seconds, Your Honor.  If that

20   were the standard, then the janitor would be a managing agent

21   if I sued after I slipped on the floor.  The janitor would be

22   using his discretion to mop the floor.  The question of the

23   exercise of that discretion would be to issue, in my slip and

24   fall case, I wouldn't have to subpoena the janitor, he would

25   automatically be a managing agent.

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 9 of 30 PageID# 1032
Case 2:12-cv-00369-MSD-TCB   Document 39-22   Filed 08/31/12   Page 9 of 30 PageID# 567

9

1          So, you would have this resolving scope of managing

2   agent authority depending on what the facts in a particular

3   case were.  That's not the standard.  The standard is it's

4   black and white, you are either a managing agent--

5          THE COURT:  Well, it's never black and white --

6          MR. KOSTEL:  Think about the context of--

7          THE COURT:  Because the Court has to conclude whether

8   or not these individuals have sufficient discretion in

9   exercising their judgment concerning corporate matters.  That's

10  a factual determination the Court has to make in every case.

11         MR. KOSTEL:  Certainly.  But I'm asking you to look

12  at the context of the rule that says, officers, directors and

13  managing agents.  The first two are very readily identifiable.

14         I think the drafters of the rule intended for

15  managing agent to be in that echelon, not to be the echelon of

16  somebody who is answering the phone doing customer service

17  calls.

18         Thank you, Your Honor.

19         THE COURT:  Well, the Eastern District has made it

20  quite clear that there are three factors this Court has to

21  consider.  And I believe the second and third factors basically

22  apply to any employees.

23         So, it's really the first factor that is controlling,

24  whether the corporation has invested that person with

25  sufficient discretion to exercise their judgment concerning

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 10 of 30 PageID# 1033
Case 1:12-cv-00500-LMB-TCB   Document 39-22   Filed 05/28/12   Page 11 of 31 PageID# 568

10

1   corporate matters.

2          Now, the janitor mopping the floor at 7 or 7:30 isn't

3   exercising his judgment concerning a corporate matter because

4   the mopping the floor isn't a corporate matter.

5          This case is somewhat different than that because

6   they are exercising their judgment in regards to making a final

7   determination based on company policies, that something should

8   or should not or is or is not disputed.  The Court has

9   insufficient information in its possession to conclude that

10  these individuals are managing agents.

11          However, what the Court is clear about is that there

12  is sufficient case law that says when there is any doubt, that

13  doubt is to be resolved in the fact, in the determination that

14  they are.  And that's where the Court at this point in time

15  finds that there may be some doubt and, therefore, or that

16  there is some doubt based on their job description and,

17  therefore, will conclude under these circumstances they may be

18  defined as managing agents.

19          Now, you said that those were the only two questions

20  concerning the motion, but I thought the motion also dealt with

21  the fact that the 30(b)(6) notice was overly broad.

22          MR. KOSTEL:  I raised that issue, Your Honor, but if

23  they are prepared to renotice the deposition, I would object at

24  that point if the Court wants to consider it later, but I would

25  be happy to address it now also.

Case 1:11-cy-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 11 of 30 PageID# 1034
Case 1:12-cv-00506-MJB-TCB   Document 39-22   Filed 03/28/12   Page 21 of 30 PageID# 569

11

 1          THE COURT:  All right.  Well, you seem as if you wish

 2   to say something.

 3          MR. ERAUSQUIN:  Just real briefly, Judge.

 4          The concern that we see from the defendant is the

 5   number of topics and the way in which we have described the

 6   topics.  And as we have made clear to them, we've outlined

 7   these topics with specificity so as to minimize the number of

 8   discovery issues we have in the case, the scope of the

 9   deposition, and so that they can adequately prepare their

10   30(b)(6) representatives.

11          We have had a meet and confer session with them about

12   these topics, that we believe they are appropriate.  These

13   types of depositions have been compelled.  We do most of our

14   litigation down in the Richmond division.

15          For those reasons, we believe that 30(b)(6) notice as

16   issued is appropriate, Judge.

17          THE COURT:  All right.  Well, the Court would not

18   conclude that a notice of deposition is overly broad simply

19   because of the number of topics sought to be deposed.  It's

20   what those topics are.

21          Having reviewed the topics, the Court does conclude

22   that there are, in fact there is less than 27 because they are

23   repetitive issues or topics, at least in the Court's opinion.

24          However, there are some issues that the Court does

25   not believe are relevant.  So, we can deal with this matter now

Case 1:11-cy-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 12 of 30 PageID# 1035
Case 1:21-cv-00606-MAB-TCB   Document 33-22   Filed 09/28/12   Page 12 of 30 PageID# 2570

12

1   or, based upon that information, the parties can get together

2   and try to narrow the topics.

3       MR. KOSTEL:  Your Honor, if you have reviewed it, we

4   might as well go ahead and get to the topics themselves.

5       THE COURT:  All right.  Because the Court finds,

6   number 1 not really even relevant.  The history and corporate

7   structure of defendant Flagstar Bank has absolutely nothing to

8   do with whether or not these individuals participated in

9   keeping inaccurate information on the plaintiff's credit

10  report.

11      Flagstar's knowledge and understanding of Fourth

12  Circuit's explanation, completely irrelevant.

13      The method, manner and terms of compensation for each

14  Flagstar employee, the Court doesn't find any relevance.

15      Flagstar's best estimate of the expense and costs of

16  each ACDV investigation, the Court does not find relevant.

17      Your knowledge of the Bach versus First Union FCRA

18  case, the Court does not find relevant.

19      The Court is a little confused in regards to 18, 19,

20  26 and 27, a little--  I don't quite understand what you're

21  asking for, for one.  And because it's unclear as to what

22  you're asking for, the Court finds it difficult to determine

23  whether or not it's relevant or not.  The Court doesn't

24  understand what an e-Oscar scorecard is, for one.

25      MR. ERAUSQUIN:  Can I address all these when you're

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 13 of 30 PageID# 1036
Case 3:12-cv-00506-MBS-TEB   Document 33-22   Filed 03/28/12   Page 13 of 30 PageID# 571

13

1  finished, Your Honor?

2          THE COURT:  Okay.  So, those are the ones that the

3  Court deems that are completely not relevant.

4          Number 2, in regards to previous litigation, well,

5  there can be all types of litigation.  There could be job

6  discrimination complaints and all of the such.

7          So, the Court would find number 2 only relevant as to

8  the litigation involving the claims in this particular

9  complaint.

10          MR. KOSTEL:  And then my other objection to that one,

11  Your Honor, was five years, going back five years.  Would two

12  years be sufficient?

13          MR. ERAUSQUIN:  Judge Payne has actually ruled on

14  this.  He said we should have used three years.  His ruling was

15  three years prior--

16          THE COURT:  I was going to say three.

17          MR. KOSTEL:  No objection.

18          MR. ERAUSQUIN:  Three years prior to the acts

19  complained of is--

20          THE COURT:  Well, would plaintiff's counsel like to

21  address issues 18, or topics 18, 19, 26 and 27?

22          MR. ERAUSQUIN:  Well, we would like to start with 5,

23  Judge.  5 goes to the issue of willfulness.  That is, whether

24  or not Flagstar's interpretation of the requirements of the

25  Fair Credit Reporting Act pursuant to the Supreme Court's

Case 1:11-cv-01130-AJT-IDD Document 75 Filed 02/29/12 Page 14 of 30 PageID# 1037
Case 1:11-cv-01130-MBB-TCB Document 39-22 Filed 03/28/12 Page 14 of 30 PageID# 672

14

1    decision in Safeco and how it obtained that understanding--

2                THE COURT:  What willfulness goes to is whether or

3    not a trier of fact has determined whether or not Flagstar's

4    employees' conduct amounts to willfulness, meets the definition

5    of willfulness.

6                Their understanding of what that definition is is

7    completely irrelevant.  It's the trier of fact--  The judge is

8    going to instruct the jury of what the definition of

9    willfulness means.  Then the trier of fact has to determine

10   whether or not the defendants' conduct meets said definition.

11   That's the only thing that is relevant concerning willfulness.

12                MR. ERAUSQUIN:  Well, in the Supreme Court's decision

13   in Safeco the issue was whether or not the individual who is

14   alleged to have violated the Fair Credit Reporting Act had an

15   interpretation of the statute that was reasonable.

16                And so, our position would be that with respect to--

17   If Flagstar Bank would say, for example, we never read the

18   Fourth Circuit's decision in the Johnson case--  Which, by

19   about the way, Judge, is the seminal case not just in our

20   circuit but across the country, we would argue that that went

21   to whether or not their interpretation of the statute was

22   reasonable if they never read the case law surrounding it as it

23   applies at least in our circuit.

24                THE COURT:  But an interpretation of an entire

25   statute is one thing.  Whether or not the parties' conduct

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 15 of 30 PageID# 1038
Case 2:12-cv-00360-MB-TCB   Document 28-22   Filed 09/28/12   Page 15 of 30 PageID# 573

15

1    amounts to willful or reckless behavior is another.

2         MR. ERAUSQUIN:  Yes, sir.  But the conduct is driven

3    by the company's policies and procedures, which are created by

4    lawyers who are reading the statute and reading the case law

5    surrounding the statute.

6         THE COURT:  But these employees when they conducted

7    themselves--  There is no information in this Court's

8    possession that when these employees conducted themselves in

9    this manner, that they had been previously advised by their

10   lawyers of what willfulness means.

11        MR. ERAUSQUIN:  Yes, sir.  If that becomes an issue,

12   we can revisit that, I guess, Judge.

13        I was trying to follow the numbers in which you had

14   expressed some concern with the relevance of the topics, and I

15   missed the next few of them.  After 5, Your Honor--

16        THE COURT:  That the Court found not relevant?

17        MR. ERAUSQUIN:  That the Court found, right, not

18   relevant.

19        THE COURT:  13, 16, and 25.

20        MR. ERAUSQUIN:  With regard to actually both 13 and

21   16, this I think falls into the category of two that have

22   significant overlap.  The issue is whether or not Flagstar

23   apportioned the proper resources to its employees to determine

24   whether or not the consumer's dispute had any validity.  The

25   issue generally, and we've--

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 16 of 30 PageID# 1038
Case 1:12-cv-00586-LMB-TCB   Document 39-22   Filed 08/23/12   Page 16 of 30 PageID# 2574

16

1        THE COURT:  They paid them.

2        MR. ERAUSQUIN:  Correct, Judge, but the issue is how

3   they paid them.

4        THE COURT:  How much they get paid is irrelevant.

5   Your argument would be then that people who get paid less

6   money, do a poor job; and people who get paid a lot of money,

7   do a wonderful job.  Based on the Court's experience, we know

8   that's not the case.

9        MR. ERAUSQUIN:  Right.  We are not exactly there,

10  Judge.  The way that banks, at least most banks, this is our

11  first litigation with Flagstar, set up the process by which

12  ACDV employees get paid is they get paid on quality and they

13  get paid on production.  Quality relates to how closely they

14  follow the procedures of the company.  Production relates to

15  how many of these disputes they process.

16       If they process more disputes, they get paid more

17  money, which means that inherently they spend less time per

18  dispute.  That's what we were getting to with the way that they

19  incentivize their employees to process a greater amount of

20  disputes per day.  If they are flying through these and

21  spending five seconds and saying, verify, verify, verify,

22  without conducting an investigation, that's relevant, Judge.

23       THE COURT:  But then the issue is whether or not they

24  conducted a reasonable investigation.

25       MR. ERAUSQUIN:  Correct.

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 17 of 30 PageID# 1040
Case 1:21-cv-03500-MBB-TCB   Document 33-22   Filed 03/13/12   Page 31 of 31 PageID# 26575

17

1        THE COURT:  Not how much time it took to conduct said

2   investigation.

3        MR. ERAUSQUIN:  Well, it--

4        THE COURT:  Simply because an investigation may take

5   an hour by some ACDV employee and the same investigation may

6   take 30 minutes by another ACDV employee, doesn't mean that the

7   employee who took 30 minutes did a bad job, a worse job than

8   the one who took an hour.  Some employees are better than other

9   employees.

10        Just like lawyers, some lawyers take a lot longer to

11   accomplish the exact same task than other lawyers do.  That's

12   why they get paid differently.

13        The Court does not find that information to be

14   relevant.

15        MR. ERAUSQUIN:  25 actually would fall into the same

16   category as 5, but with, with even more poignance, Judge,

17   because this was a decision that related to this particular

18   defendant.

19        In other words, there was a Fair Credit Reporting Act

20   decision by which one of the predecessor companies of this

21   defendant was told that its procedures did not comply with the

22   Fair Credit Reporting Act.  The jury awarded, I believe it was

23   4 or $600,000.  That prior litigation knowledge, that prior

24   warning would be, would serve as notice to the defendant that

25   it needed to take another look at the procedures that its

18

1   employees were using to investigate these disputes.

2        THE COURT:  I thought you said it was the predecessor

3   of this bank?

4        MR. ERAUSQUIN:  Correct.

5        THE COURT:  Not this bank.

6        MR. ERAUSQUIN:  Correct.  It was the First Union

7   entity that was the subject of the prior litigation.  As I

8   understand it from the depositions that were taken in this

9   case, this entity took over First Union.  Therefore, it

10  subsumed that company that was the previous defendant in the

11  earlier litigation.

12       THE COURT:  And were the claims in that litigation

13  substantially identical to the claims in this litigation?  And

14  were the allegations about whether or not the defendant

15  properly filed or properly followed certain procedures

16  essentially and substantially identical as the allegations

17  contained in this complaint?

18       MR. ERAUSQUIN:  The only section of the Fair Credit

19  Reporting--  The answer is yes.  The only section of the Fair

20  Credit Reporting Act that you can sue on based on a furnisher's

21  conduction of an investigation is Section 1681s-2(b).  That was

22  the issue, that was the claim at issue in Bach, and that's the

23  claim at issue in this case, Judge.

24       THE COURT:  No.  What I am trying to get to is the,

25  was the factual scenario substantially identical to the one in

Case 1:11-cv-01130-AJT-IDD Document 75 Filed 02/29/12 Page 19 of 30 PageID# 1042
Case 1:11-cv-00808-CMH-TCB Document 33-22 Filed 03/28/12 Page 19 of 30 PageID# 577

19

1   this case?

2            MR. ERAUSQUIN:  In Bach I believe it was an

3   individual who was the subject of identity theft, that was an

4   account that was not hers.  We had a similar issue in this case

5   with regard to the accuracy of the credit recording.

6            THE COURT:  But it dealt with the accuracy of the

7   credit report and the procedures followed to determine whether

8   or not that information was accurate?

9            MR. ERAUSQUIN:  Yes, sir.

10           THE COURT:  The Court will find 25 relevant.

11           MR. ERAUSQUIN:  With regard to 26, this goes to

12  willfulness.  In other words, we're trying to get Flagstar to

13  take a position as to whether or not the actions that its

14  employees taken, took in this case were the result of a

15  mistake, or did they intend for the employees to take the

16  actions that they took.

17           If they want to concede, essentially, negligence and

18  say, our employees dropped the ball here, we want to know that

19  up front so that we can structure our jury argument

20  accordingly.  We are just asking them to take a position as to

21  what happened in this case, Judge.

22           THE COURT:  That clarifies what that means.  The

23  Court will find that relevant.

24           MR. ERAUSQUIN:  And, actually, that's explicitly what

25  27 is saying as well.

Case 1:11-cv-01130-AJT-JDD  Document 75  Filed 02/29/12  Page 20 of 30 PageID# 1043
Case 3:12-cv-00068-DMB-CBB  Document 23-2  Filed 05/23/21  Page 20 of 30 PageID# 578

20

1   THE COURT:  It would be the same for 27.  What about

2   18 and 19?

3   MR. ERAUSQUIN:  All right.  With regard to 18, the

4   Fourth Circuit, they had a decision in Saunders, it was about

5   two years ago, that related to whether a furnisher's

6   investigation of a consumer dispute could be categorized as

7   reasonable, relates to whether or not that information was

8   accurate and complete.

9   In other words, when the furnisher responds back to

10  the credit reporting agency--

11  THE COURT:  The case isn't going to assist me in

12  determining relevance without telling me what 18 means.

13  MR. ERAUSQUIN:  Yes, sir.

14  THE COURT:  That would be the Court's problem.

15  MR. ERAUSQUIN:  I am almost there, Judge.  I am

16  almost there.  One of the components as to whether or not that

17  information is complete is whether or not that information is

18  the subject of an ongoing dispute by the consumer.

19  Code XB in number 18 means in the credit reporting

20  world, this account is the subject of a dispute.  CCC means

21  compliance condition code.

22  So, we're asking whether or not Flagstar understood

23  that when it reported that the trade line was the subject of an

24  ongoing dispute, that it would no longer be included as part of

25  that consumer's credit score.

Case 1:11-cv-01130-AJT-IDB   Document 75   Filed 02/29/12   Page 21 of 30 PageID# 1944
Case 1:12-cv-00006-LMB-TCB   Document 39-2   Filed 05/28/12   Page 22 of 31 PageID# 679

21

1      THE COURT:  That's probably the way you should have

2  phrased the question or the topic.

3      MR. ERAUSQUIN:  Yes, sir.

4      THE COURT:  The Court will find that relevant.

5      What about number 19?

6      MR. ERAUSQUIN:  The e-Oscar scorecard, this is a

7  month-by-month report as to how the defendant has responded to

8  credit reporting disputes that have come in through the credit

9  reporting agencies.

10      The evidence we're going to seek is in how many

11  instances where disputes came in you did you just say, verified

12  as reported.  Or in how many instances did you say that we need

13  to modify the information or that the account should be

14  deleted, for example, due to fraud.

15      And so, we're asking as to the defendants' knowledge

16  as to how it has responded to e-Oscar disputes each month.

17      THE COURT:  You mean prior to an investigation?

18      MR. ERAUSQUIN:  Correct.  I don't have the timing of

19  every single ACDV that we have in this case, but we have

20  limited it to the period beginning January 1, 2010, to the

21  present.

22      We would accept a stipulation that it would be the

23  period that began the month before the ACDVs in this case were

24  processed.  The ACDVs are the disputes that come from the

25  credit reporting agencies.

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 22 of 30 PageID# 1045
Case 1:11-cv-01130-LMB-TCB   Document 39-2   Filed 06/28/12   Page 22 of 30 PageID# 580

22

1        THE COURT:  No, that really wasn't the Court's

2  question.  What the Court is trying to determine is, if

3  something was verified as reported, and it was determined later

4  on that that was an accurate verification, that doesn't appear

5  to help your case at all.  It only appears that if they say

6  verified as reported and later on there was a determination

7  that that determination was inaccurate, would that be helpful.

8        MR. ERAUSQUIN:  Correct.  And to the extent that the

9  jury finds that the information reported was inaccurate and,

10  for example, that this defendant says verified as reported for

11  99 percent of the disputes that come in, we want to argue it's

12  quicker to click that verified as reported button than it is to

13  actually go back behind the scenes and do an investigation to

14  find out if the information was accurate or not.

15        THE COURT:  But if they click the button and it was

16  the right click, then they did nothing wrong.

17        MR. ERAUSQUIN:  Correct.  But if the jury, if we get

18  to that point, we're not going to know when we're at trial

19  whether or not the jury is going to rule that way.  We want to

20  have the evidence in hand to argue for willfulness.

21        So, the jury is going to have to determine both there

22  was a violation and it was willful.

23        THE COURT:  Is there a procedure by which the bank

24  verifies something and then later on that determination is

25  determined to be accurate or not accurate?

Case 1:11-cv-01130-AJT-IDD  Document 75  Filed 02/29/12  Page 23 of 30 PageID# 1046
Case 1:11-cv-00506-MBB-TBB  Document 38-22  Filed 03/28/12  Page 23 of 30  Page ID #581

23

1    MR. ERAUSQUIN:  The bank as part of its determination

2  to whether to verify it has to determine whether or not it's

3  accurate or not accurate.  It has to do the quote/unquote

4  reasonable investigation that <u>Johnson</u> requires.

5    THE COURT:  I mean subsequent to making the statement

6  verified as reported.

7    MR. ERAUSQUIN:  That's it, that's the--  I'm sorry.

8    THE COURT:  Is there any quality assurance that they

9  say later on that say, well, you verified those hundred as

10 accurate, and based on our audit or quality assurance process,

11 we've determined that 60 of those verified as accurate were

12 wrong?

13   MR. ERAUSQUIN:  Correct.  That may be part of its

14 internal audit procedures, but from the consumer standpoint as

15 soon as that verified as reported button is clicked, that

16 information is staying in your credit report.  There is no,

17 we're going to come back 30 days after the fact and revisit it.

18 That's the end of the investigation as far as the consumer is

19 concerned.

20   THE COURT:  I understand that.  But there are certain

21 elements, four elements that you have to prove to prove that

22 they violated the FCRA.  The fact that they click on a button

23 isn't one of those.  The fact that they click on the button and

24 that was the wrong click and they didn't do a reasonable

25 investigation to determine prior to clicking on the button that

24

1   it would be the right click, that would be relevant

2   information.

3           MR. ERAUSQUIN:  Yes, sir.

4           THE COURT:  The fact that they clicked the button

5   doesn't help anyone.

6           MR. ERAUSQUIN:  Yes, sir.  But this goes to the

7   previous topic we were talking about, the amount of disputes

8   that they process in a day.  Our depositions that we have taken

9   in other cases, for example, these employees will take

10  20 seconds per dispute and just go through and just say, the

11  information on this screen matches the information on this

12  screen, I am going to click verified as reported, and they fly

13  through them.

14          The reason that we're asking for this information is

15  so we can argue to the jury, in a given month you processed

16  50,000 of these disputes, and in every single one of them you

17  just clicked the verified as reported button.  You are not

18  doing a reasonable investigation.  In fact, you're not doing

19  any investigation, you're just clicking a button.

20          THE COURT:  All right.  Well, I'm sure their response

21  will be, no, we conducted an investigation before we clicked

22  the button, but if that's your argument--  Mr. Kostel.

23          MR. KOSTEL:  Yes, Your Honor, real quick on that last

24  one, start with the last one.

25          They are already taking the depositions of the

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 25 of 30 PageID# 1048
Case 1:12-cv-00060-LMB-TCB   Document 28-2   Filed 03/28/12   Page 26 of 31 PageID# 383

25

 1    operators.  These might be appropriate topics for the

 2    operators.  If they need to take a corporate deposition on

 3    that, we can revisit it if they don't get the information they

 4    want from the operators.

 5            THE COURT:  That appears to be reasonable.

 6            MR. KOSTEL:  And, Your Honor, at the risk of

 7    backtracking a little bit here, I just want to address two

 8    subjects that you just ruled on, number 25, the Bach v. First

 9    Union FCRA case.  My concern there is our answer may be, we got

10    information from our lawyer.  Well, what's the information you

11    got from your lawyer?  I don't want to set this up for some

12    kind of privilege argument when our in-house counsel tell them

13    about the case.

14            THE COURT:  Well, they can't get information from

15    what the lawyer says.

16            MR. KOSTEL:  But I need to educate them on this

17    subject, which is framed in terms of legal advice from counsel.

18    What did your counsel tell you about the Bach v. First Union

19    case.  That's my concern with the topics that say, tell us

20    about this case.

21            They have already covered all of our policies, all of

22    our manuals.  The question should be, under your--  We

23    designate a deponent on the policy--

24            THE COURT:  Well, let's make this simple--

25            MR. KOSTEL:  Did your policy change as a result of

Case 1:11-cv-01130-AJT-IDD Document 75 Filed 02/29/12 Page 26 of 30 PageID# 1949
Case 1:12-cv-00006-MBF-CBB Document 39-2 Filed 08/23/12 Page 26 of 30 PageID# 584

26

1   the <u>Bach v. First Union</u> case, that would be a very simple

2   question.

3           THE COURT:  Counsel, let's make this simple.  We will

4   change 25 to your personal knowledge.  Then we will avoid the

5   attorney/client privilege problem.  If they don't have any

6   personal knowledge, then that will be the answer to the

7   question.

8           MR. KOSTEL:  That's fine, as long as I don't have to

9   educate them, which I would have to do ordinarily under a

10  30(b)(6) topic.

11          THE COURT:  But that's not--

12          MR. KOSTEL:  Usually lack of knowledge--

13          THE COURT:  Usually that wouldn't be personal

14  knowledge.  What you educate them on is not their personal

15  knowledge.

16          MR. KOSTEL:  Understood, understood.  And then, Your

17  Honor, number 17.  I mean, it's so overbroad.  I think it needs

18  some attention because it also duplicates number 14.

19          Everything that was done regarding the plaintiff's

20  disputes made pursuant to the FCRA, including all dates of

21  communications or actions, all documents considered, all

22  persons involved, the location of all such actions, all steps

23  taken, you get the idea.  We're already talking about every

24  dealing we had with the plaintiff in number 14.  I didn't

25  object to that.

27

```
 1              But this notion that one person or, you know, we have
 2    got to get all knowledge from the bank on all subjects and all
 3    locations and all times, that's onerous, to prepare a deponent
 4    on all those things, when it is already subsumed in number 14.
 5              Thank you.
 6              MR. ERAUSQUIN:  As to the privilege issue, Judge, we
 7    are, of course, not intending to convey privilege, but they
 8    can't have it both ways.  They can't defend the willfulness
 9    claim by saying, well, we investigated these based on
10    procedures and advice that we got from lawyers, but we're not
11    going to tell you what that advice was or why we chose these
12    policies to put in place.
13              THE COURT:  You cannot get around the attorney/client
14    privilege.
15              MR. ERAUSQUIN:  Yes, sir.  Yes, sir.
16              THE COURT:  It's a recognized privilege in the
17    federal system.
18              MR. ERAUSQUIN:  Absolutely.  And that's why we rely
19    heavily on the use of Rule 37(c)(1).  They are not going to be
20    permitted to use at trial information that they don't give us
21    during discovery.
22              So, this actually ties back to 17, which he was just
23    discussing.  This goes directly to what was done with regard to
24    these investigations.  If they don't want to tell us about it,
25    that's in my fine, but we're going to move later to preclude
```

Case 1:11-cv-01130-AJT-IDD  Document 75  Filed 02/29/12  Page 28 of 30 PageID# 1051
Case 1:12-cv-00506-MBB-TCB  Document 39-32  Filed 03/23/21  Page 28 of 31 PageID# 686

28

1     the use of that evidence in their defense.

2          THE COURT:  You have an absolute right to use the

3     Federal Rules of Civil Procedure as the way you interpret them.

4          MR. ERAUSQUIN:  Yes, sir.  But I just want to be

5     clear so we don't get into a discovery dispute and have to call

6     chambers, 17 relates directly to what was done with regard to

7     investigating these disputes for these consumers.  It says,

8     everything--

9          THE COURT:  I think his problem is you say all.

10         MR. ERAUSQUIN:  Yes, sir.  We want to know--

11         THE COURT:  Like if someone, like if a mail carrier

12    put the, took the dispute information, someone put it in an

13    envelope and he went to the mail box and dropped it off, that

14    would be, that would be part of 17.

15         MR. ERAUSQUIN:  Yes, sir.

16         THE COURT:  Well, that is a little overbroad.  Every

17    little thing that happened in regards to this dispute is not

18    really relevant.  Whether or not, whether or not a mailman

19    picked up a dispute in an envelope out of a mail box, it's not

20    relevant.

21         MR. ERAUSQUIN:  Correct.  I think we are kind of

22    tilting at windmills here, Judge.  If they don't want to tell

23    us about the mailman, we're not going to push it, but they

24    can't use that at trial, is the point.

25         THE COURT:  We understand that.

Case 1:11-cv-01130-AJT-IDD  Document 75  Filed 02/29/12  Page 29 of 30 PageID# 1052
Case 1:12-cv-00006-LMB-TCB  Document 33-22  Filed 05/28/12  Page 29 of 30 PageID# 387

29

1          MR. ERAUSQUIN:  Yes, sir.  Okay.

2          THE COURT:  I am sure counsel completely understands

3     the Federal Rules of Civil Procedure.

4          MR. ERAUSQUIN:  Yes, sir.  Thank you, Judge.

5          MR. KOSTEL:  Thank you very much, Your Honor.  That's

6     all we have.

7          Should we review the topics that you are eliminating

8     one more time for the record?

9          THE COURT:  All right.  That was topic 1.  Of course,

10    we modified topic 2.  I believe topic 5.  Topic 13.

11         MR. KOSTEL:  16, Your Honor.

12         THE COURT:  16.  I believe that was it.

13         MR. KOSTEL:  And 17 as limited, or as discussed, I

14    guess.

15         THE COURT:  Correct.

16         MR. KOSTEL:  Thank you, Your Honor.

17         THE COURT:  All right.  Now, the plaintiff's motion

18    for leave to supplement their amended complaint.

19         MS. KELLY:  We don't have a motion--

20         MR. KOSTEL:  I think we just save some time, Your

21    Honor.

22         THE COURT:  Oh.  No, that's in the wrong file.  Thank

23    you.

24         MR. KELLY:  Okay.

25         THE COURT:  That concludes this matter, correct?

Case 1:11-cv-01130-AJT-IDD   Document 75   Filed 02/29/12   Page 30 of 30 PageID# 1052
Case 12-12-cv-00060-MBF-CBB   Document 29-22   Filed 08/23/12   Page 30 of 30 PageID# 288

30

1          MR. KOSTEL:  Correct, Your Honor.

2          MS. KELLY:  Thank you, Judge.

3          MR. KOSTEL:  Thank you.

4          MR. ERAUSQUIN:  Thank you.  Have a good day, Your

5    Honor.

6          -------------------------------------------------

7

8        C E R T I F I C A T E  of  T R A N S C R I P T I O N

9

10          I hereby certify that the foregoing is a true and

11   accurate transcript that was typed by me from the recording

12   provided by the court.  Any errors or omissions are due to the

13   inability of the undersigned to hear or understand said

14   recording.

15

16          Further, that I am neither counsel for, related to,

17   nor employed by any of the parties to the above-styled action,

18   and that I am not financially or otherwise interested in the

19   outcome of the above-styled action.

20

21

22

23              /s/ Norman B. Linnell

24            Norman B. Linnell

25            Court Reporter - USDC/EDVA