1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division



-----------------------------:
                             :
ADELINA C. ROCABRUNA, et al., :
             Plaintiffs,     :
                             :
 -vs-                        :        Case No. 1:12-cv-506
                             :
                             :
BANK OF AMERICA, N.A.,       :
             Defendant.      :
                             :
-----------------------------:




                         HEARING ON MOTIONS


                         October 12, 2012


              Before:  Theresa C. Buchanan, Mag. Judge




APPEARANCES:

Leonard A. Bennett and Kristi C. Kelly,
Counsel for the Plaintiffs


Anand V. Ramana and Robert W. McFarland,
Counsel for the Defendant

1          NOTE:  The case is called to be heard at 9:59 a.m.

2   as follows:

3          THE CLERK:  Rocabruna, et al. versus Bank of

4   America, N.A., case 12-cv-506.

5          Counsel please note your appearance for the record.

6          THE COURT:  Good morning.

7          MR. McFARLAND:  Good morning, Your Honor.

8          MR. BENNETT:  Good morning, Your Honor.  My name is

9   Leonard Bennett, I represent the plaintiffs, Mr. and Mrs.

10  Rocabruna.

11         THE COURT:  All right.

12         MR. BENNETT:  My co-counsel, Kristi Kelly also.

13         THE COURT:  All right, good morning.

14         MR. McFARLAND:  Good morning, Your Honor.  Robert

15  McFarland, counsel for defendant Bank of America, N.A.

16         MR. RAMANA:  Good morning, Your Honor.  Anand

17  Ramana, also with McGuire Woods, counsel for Bank of America.

18         THE COURT:  All right, good morning.

19         All right.  Before I forget about it, I want to deal

20  with a motion to file under seal.

21         Did anyone have anything to add to that?  Okay.

22         MR. McFARLAND:  No, Your Honor.  We would file our

23  memorandum in the next few days.  I think under the protective

24  order that was entered by the Court, the motion to seal has

25  been filed by the plaintiff, and we will file a memorandum in

1    support of the motion to seal.

2            THE COURT:  You did.  I think we were talking about

3    a different one.  You filed a motion to file under seal.

4    Maybe we're talking about two different motions, let's see

5    here.

6            MR. McFARLAND:  I think both sides have filed a

7    motion to seal, Your Honor.

8            THE COURT:  Right.

9            MR. McFARLAND:  We were going to submit a further

10   memorandum explaining why the document we believe is

11   confidential and proprietary.

12           THE COURT:  Okay.  Well, we're all talking about the

13   same document then, I think, which is the -- let me pull it

14   out here.

15           MR. McFARLAND:  I believe it is an exhibit to their

16   motion to compel.

17           THE COURT:  Right, the charge off reversal - adjust

18   credit report?

19           MR. McFARLAND:  Exactly, Your Honor.

20           THE COURT:  Okay.

21           MR. McFARLAND:  Just one document, I believe it's

22   give or take 12 pages.

23           THE COURT:  Right.  Did you have anything to add to

24   that motion?

25           MR. BENNETT:  Only one thing.  That the parties

1    would probably jointly appreciate, the docket may as well --

2    Your Honor, we received a production, additional production of

3    documents yesterday, and one additional citation on what the

4    procedures used by the defendant are.

5              This is another document that while I was in

6    mediation with your retired esteemed colleague all day

7    yesterday, we didn't have the opportunity to draft a new

8    motion to seal.

9              THE COURT:  Is this something that is going to have

10   to be filed with what?

11             MR. BENNETT:  I would like to ask the Court and

12   defendant's consent to supplement our motion to add this

13   exhibit, Exhibit B, it's also asserted to be a procedure, and

14   I am also --

15             THE COURT:  Okay.

16             MR. BENNETT:  -- interested in talking about it

17   today, and I don't want to put the posture of a sealed

18   document in a difficult place.

19             THE COURT:  I think I can go ahead and really take

20   care of both of them today.  I mean the motion to seal is on

21   the docket without public parties being able to see exactly

22   what document it is.  But I find that the motion to seal is

23   appropriate as to this document.  And as to that -- as well as

24   since we're talking about the same basic thing.  And that I

25   find that because this is really confidential internal

1    operating procedures for the bank, that it is appropriate that

2    it be filed under seal and not disclosed to the public.

3           So, I am going to go ahead and grant the motion to

4    file under seal as to this and to that.

5           MR. BENNETT:  Thank you, Judge.

6           THE COURT:  And let me just go ahead and have you

7    hand that to Mr. Tucker, and we will put this in the envelope

8    along with this document.

9           I think, Justin, did they give me a proper envelope

10   to file under seal for this?  Okay, so we will put them both

11   in the same envelope for the clerk, file under seal.

12          MR. BENNETT:  I appreciate it.  Thank you, Your

13   Honor.

14          THE COURT:  Thank you.  All right.  So, now this

15   comes on your motion to compel and motion for sanctions.  Do

16   you have anything to add to your motions?  I have read

17   everything.

18          MR. BENNETT:  Yes, Your Honor.  What I would simply

19   add -- of course, Your Honor, this is driving up from Newport

20   News, it's like scheduling a root canal at 10 o'clock in

21   Alexandria.  And so, I recognize -- the Court recognizes that

22   it is not something that is pleasant for either counsel.  But

23   we certainly recognize that this is -- this is not the kind of

24   work that federal judges should be doing.

25          With that said, the only thing I would add is that

1    the core of our argument is that really nothing or almost

2    nothing substantive with respect to procedures, with respect

3    to notice and knowledge, and with respect to the efforts made

4    to avoid reckless conduct has been disclosed.

5         We have had promises -- you see some of the e-mail

6    exchanges, Exhibit S, for example, where counsel has promised

7    they would supplement.  We did not receive any withdrawals of

8    objections or supplementation until yesterday.  And even then,

9    the only new procedure we received with respect to what is

10   done when someone makes a credit reporting dispute is that

11   other document that I have just provided.

12        Now, the first document is essentially -- it's not

13   for the Indian outsource or the Indian ACDV operators.  It is

14   for servicing operations employees.  And even then, it simply

15   says, here's the procedure when you are going to make an

16   investigation, here is the steps that you use to determine if

17   it's time to do an investigation.

18        And then it refers the employee, even though it's

19   not the ACDV operators in this case, it refers the employee to

20   something called the credit reporting portal to find out how

21   to handle particular kinds of disputes.

22        So, for example, if someone disputes and says, I'm

23   the victim of identity theft, the bank has a large protocol of

24   detailed procedures for that.  If they say, I am not dead, you

25   have reported me as deceased, there is a separate set of

1   procedures.  Each triggers a different set of procedures.

2         And the only thing we have been provided is the

3   instructions on getting the employee, not even the relevant

4   employees, but getting an employee to the point where they

5   know, all right, now it's time to go look and find out how you

6   are supposed to investigate.

7         The defendant has in its opposition brief identified

8   Bates numbers, and that is Exhibit A, it's a collection of

9   deep subparts of operations manuals that deal with other

10  things.  But it simply says, here is how you are supposed to

11  know when it's time to go to the credit reporting portal.

12        THE COURT:  So, what is it that you want then?  The

13  information that is in the portal?

14        MR. BENNETT:  Yes, Your Honor.  And this is not --

15  this isn't simply supposition.  The first jury, FCRA jury

16  trial against a furnisher was our case tried before the late,

17  the late great Judge Williams in Johnson versus MBNA.  MBNA is

18  the -- it is now known as FIA Card Services, but it is Bank of

19  America's credit card subsidiary.  And I have seen these

20  procedures.  I have litigated other Bank of America cases and

21  we have seen these procedures.

22        And in this circumstance, we have formidable defense

23  lawyers, but they are disadvantaged by a defendant that isn't

24  cooperating with them.  And they are defense lawyers who

25  themselves, despite their significant skill set, have never

1    litigated an FCRA case.  This is just --

2         THE COURT:  Well, let me, let me back up just a

3    minute.  I am not -- let me -- without letting you malign

4    either the defendant or its attorneys, which I think you are

5    trying hard not to do, I have got to tell you that -- two

6    things right off the bat.  You can't grant sanctions unless

7    you have had a prior court order -- or you should not and I

8    would not grant sanctions unless there has been a prior court

9    order compelling the party to produce documents or answer

10   questions and then they violate that order.  We don't jump

11   directly to sanctions.  Okay.

12        So, since I have never had or granted an order, as

13   far as I can see in this case, that would order the defendants

14   to produce what you think should be the subject of sanctions,

15   sanctions are off the table themselves.

16        MR. BENNETT:  Judge, we haven't -- I am sorry.  We

17   haven't asked for sanctions.

18        THE COURT:  You did.

19        MR. BENNETT:  We haven't asked for -- what you are

20   referring to, with all due respect, Your Honor, is a 37(c)(2)

21   or (c)(3) sanction.  Which is, there is a court order you are

22   disobeying.

23        THE COURT:  Right.

24        MR. BENNETT:  We have a separate motion under Rule

25   37(c)(1).

1           THE COURT:  Right.

2           MR. BENNETT:  That uses the word "sanction," that's

3    in the title of it, but it's more in the nature of a motion in

4    limine.  And in Rule 737 -- Rule 37(c)(1) does not require a

5    prior order.

6           THE COURT:  Yeah, but it's for their failure to

7    provide supplements to the Rule 26(a) disclosures, is that

8    correct?

9           MR. BENNETT:  No, Your Honor, it's not.

10          THE COURT:  Well then, what are you trying to get?

11   I am not quite sure.

12          MR. BENNETT:  All right.  We have a discovery

13   deadline.  Our pretrial disclosures and our summary judgment

14   filing dates are all on us.  And the defendant has disclosed a

15   very limited number of individuals.

16          THE COURT:  Yes.

17          MR. BENNETT:  And, Judge, with all due respect, they

18   don't have to disclose anyone under 26(a)(1).  And if I move

19   to compel them to under 26(a)(1), there is no basis for that.

20   A defendant doesn't have to identify witnesses if it's not

21   going to use any.

22          THE COURT:  Okay.

23          MR. BENNETT:  The difficulty is that I have, I have

24   been told by defendant's counsel that they -- their position

25   is, well, discovery hasn't ended yet, we can still add more

1    witnesses and we can still add more documents.

2              THE COURT:  Okay.

3              MR. BENNETT:  And I am simply saying that under

4    37(c)(1) --

5              THE COURT:  I see what you're saying.

6              MR. BENNETT:  I am not asking for you to exclude

7    anything.  I mean --

8              THE COURT:  Okay.  I understand what you're saying.

9    Let's go back to the motion to compel though because I have

10   got to tell you flat out that I think that the vast majority

11   of your motion to compel is dealing with topics and areas that

12   I think are irrelevant or overbroad.  And I am having a hard

13   time finding with regard to most of these, why the defendants

14   should answer them beyond what they have proposed as an

15   alternative to their -- to their objections.

16             MR. BENNETT:  Well, Judge, there is --

17             THE COURT:  If you want, we can go through this

18   seriatim, but I am struggling with why this is relevant.

19             MR. BENNETT:  Well, there is a few things, Your

20   Honor.  The first -- and this is my first time before Your

21   Honor.  We have had -- been forced to on a much smaller

22   scale -- I have never had all encompassing objection to

23   everything, but I have been before Judge O'Grady, I have been

24   before Judge Davis, I have been before all of our other --

25             THE COURT:  Those are different cases.  This is this

1   case.

2          MR. BENNETT:  But, Judge, and that's what I keep

3   being told, and I understand that's what you are telling me.

4          THE COURT:  Yep.

5          MR. BENNETT:  But the question is whether or not

6   evidence that we're seeking that other judges have found is

7   relevant --

8          THE COURT:  I am absolutely not going to go into

9   what a different judge has done in a different case.  So,

10  don't start citing what Judge Davis has done to me when I have

11  been on the bench for 16 years, I'm sorry, and I have had a

12  lot more of these cases.

13         This is my case.  I am looking at this particular

14  case and the facts of this particular case.  So, the fact that

15  Judge Davis might have allowed discovery in a different case

16  -- and I went back and I looked at the transcript of the

17  hearing before him.  And that is not binding on me in any way,

18  shape or form.

19         So, let's just move on from that argument.

20         MR. BENNETT:  Judge -- yes, Your Honor.  But the

21  Fourth Circuit -- and I have -- this is my district and I do

22  have respect --

23         THE COURT:  Look, okay.

24         MR. BENNETT:  But the Fourth Circuit has ruled, Your

25  Honor --

1    THE COURT:  You're not going to tell me -- fine, if

2  I'm wrong, appeal me.  Let's just deal with why you need this

3  specific information.

4    MR. BENNETT:  Yes, Your Honor.

5    THE COURT:  Okay.

6    MR. BENNETT:  Yes, Your Honor.  Yes, sir -- yes,

7  ma'am.

8    THE COURT:  Now, if you want to go through this

9  seriatim, that is fine, I can do that.

10    MR. BENNETT:  I prefer --

11    THE COURT:  I have got a whole list here already

12  prepared of what I think about each one of your

13  interrogatories and requests for production of documents.

14    MR. BENNETT:  Judge, my -- the transition where we

15  end up against that wall momentarily and trying to suggest

16  that -- implied Judge Davis transcript is important here is

17  that in each instance what I have had to confront are tangible

18  objections.

19    So, for example, when an attorney says, I object to

20  providing you our compliance memos because of attorney/client

21  privilege, I am accustomed to be being able to argue for a

22  Rule 26(b)(5) privilege log.

23    THE COURT:  They should have provided a privilege

24  log.

25    MR. BENNETT:  And they have not, Judge.

1        THE COURT:  And I will go through that.  But the

2  rest of it, I have got to tell you, most of it I don't

3  understand why you should have this information.

4        MR. BENNETT:  Judge, we have essentially asked for

5  three discrete categories, and then we have subsets within.

6  The first category is what they did when they received our

7  client's disputes through the credit reporting agencies.

8        THE COURT:  Yes.

9        MR. BENNETT:  And we do not know.  We don't know.

10  They haven't produced their procedures.  They haven't produced

11  the manuals used to train the Indian ACDV operators.  They

12  haven't produced -- they haven't even identified the addresses

13  or the contact information or the job titles or the job

14  description of a single one of these individuals that had

15  contact with our client.  They have yet to disclose a single

16  human being in a way that we could discover in the U.S. or out

17  who has had contact with this actual file.

18        They have disclosed instead a professional witness.

19  And they disclosed the witness, who they claimed was the woman

20  who supervised India in 2010, until I provided them a

21  deposition from a different case where that woman said, Ms.

22  Evans, I have never been to India and I don't have

23  responsibility over them.

24        And thus they then have said, okay, we'll produce a

25  different supervisor.

1           THE COURT:  Yeah, I understand that.  Have you taken

2    her deposition yet?

3           MR. BENNETT:  They have now agreed because she had a

4    family tragedy that they would produce it on the 17th.

5           THE COURT:  Okay.

6           MR. BENNETT:  This was a deposition they originally

7    promised in September.  Our discovery ends the 18th.  And

8    we're asking -- the first thing I am going to ask her is what

9    are the procedures, what are they called, what is the name in

10   the credit reporting portal, and who are the individuals, and

11   how are they supervised.

12          And having that deposition the day before a

13   discovery cutoff greatly handcuffs us.  And we have done every

14   -- and we have not been dilatory.  We have been --

15          THE COURT:  Okay, so I understand.  That is on the

16   last date, it is kind of late.  So, what do you want me to do

17   about it?

18          MR. BENNETT:  What we have asked --

19          THE COURT:  You're going to be able to take her

20   deposition.

21          MR. BENNETT:  Well, we have asked for three weeks of

22   additional discovery.

23          THE COURT:  It's not going to happen.

24          MR. BENNETT:  Even with the defendant's stipulation

25   as to that, Your Honor?

```
1            THE COURT:  I am not going to extend the discovery
2    cutoff unless there is something additional that needs to be
3    done, not as to all discovery.  I understand that you need to
4    maybe wrap up some loose ends here.
5            MR. BENNETT:  I have no ends.
6            THE COURT:  Okay.
7            MR. BENNETT:  Judge, I respectfully, I've tried --
8            THE COURT:  Why don't we go through -- let's just
9    stop the complaints.  And let's go through your
10   interrogatories and requests for production of documents one
11   by one, because I guess that's the way we're going to have to
12   do this here --
13           MR. BENNETT:  Judge, I have the supplemental set
14   they have just now provided.
15           THE COURT:  Okay.  Could I see that?
16           MR. BENNETT:  Or, I am sorry -- and, Judge, the lay
17   of the land is that we have to prove three things.  We have to
18   prove what they did.  We have -- that is, when they received
19   the credit reporting disputes, what did the people actually
20   do.
21           THE COURT:  Yes.
22           MR. BENNETT:  Number two, we have to prove that what
23   they did when they did that was unreasonable, that it was
24   negligent.  That despite knowing of other risks -- and so, for
25   example, they didn't -- Johnson and Cushman and the jury
```

1  instructions posttrial in Mullens versus Trans Union with

2  Judge Payne, in each of these instances the jury instructions

3  is the cost benefit analysis.  To determine whether it's

4  reasonable, you look at the cost to the defendant and you

5  compare it to the potential harm to the consumer.

6          So, that is Category 1.

7          Category 2 --  I mean, Category 1 is what did they

8  do.

9          Category 2 is evidence as to whether or not it was

10  negligent.

11          And Category 3 is evidence as to whether or not it

12  was willful.  And the standard for willfulness includes, now

13  after the Supreme Court's decision in Safeco, whether conduct

14  was reckless.  And specifically, the adoption of particular

15  procedures, whether that conduct, the adoption of particular

16  investigation procedures was reckless or was it intentional.

17  That is, what it done, did they adopt these procedures knowing

18  that they had a risk of violating the law that was recklessly

19  unreasonable.

20          That's -- and it's not me, and it's not

21  hypothetical.  And candidly, Judge, it isn't Judge Davis or

22  Judge O'Grady.  It is the Supreme Court and it is the Fourth

23  Circuit.

24          And so, those three categories, we have -- there is

25  plenty more we have asked for if you would -- if you --

1            THE COURT:  I am going through them.  Let's go,

2    interrogatory 1.

3            MR. BENNETT:  Interrogatory 1, Your Honor.  We have

4    asked for the changes that they made.  We had a meet and

5    confer and we narrowed our time frame.  In Johnson, this

6    defendant was the defendant.  That's the seminal case in the

7    Supreme Court that sets the reasonableness and the balancing

8    test, cost versus benefit.

9            And the Saunders case is a decision affirming a

10   Judge Dohnal verdict.

11           THE COURT:  I understand that.  Let's go ahead.  Why

12   would you need as to each change, identify all persons who

13   participated in your decision to make the change and all

14   documents which evidence or regard it?

15           Are you kidding me?  That is so unbelievably broad.

16           MR. BENNETT:  Well, Judge, but they haven't objected

17   based on breadth.  They haven't objected based on burden.

18   They have objected on attorney/client privilege.

19           THE COURT:  First of all, let me tell you, I am not

20   sure it's relevant to begin with.

21           But secondly, as I said, the second part of your

22   question is way overbroad.

23           MR. BENNETT:  Well, Judge, if they identify the

24   individuals, the meet and confer process would have resolved

25   this completely.

18

1          THE COURT:  All right.  Number 1 I think is

2     irrelevant and overbroad.  I am going to sustain the

3     objection.

4          Let's go to number 2.

5          MR. BENNETT:  Judge, these are the individuals --

6          THE COURT:  The two -- pardon me.  Go ahead.

7          MR. BENNETT:  Both --

8          THE COURT:  2 I thought that they needed to answer

9     and I would strike the objections.  Okay.

10          MR. BENNETT:  Yes, Judge.

11          THE COURT:  So, unless the answer is incomplete

12     because of the objections, then I think it's answered.  If

13     there is more to the answer other than -- and let me say that

14     this regards -- this applies to all of the discovery

15     responses.  If there is an attorney/client privilege or work

16     product privilege that you're standing on, then you need to

17     provide a privilege log.

18          And have you done that?

19          MR. RAMANA:  No, Your Honor.  The objections were

20     interposed at the beginning of our --

21          THE COURT:  I know that they were.  So, have you not

22     actually withheld anything based on either of those

23     objections?

24          MR. RAMANA:  No, Your Honor.  And it was

25     appropriately --

1          THE COURT:  Okay.  Then we don't need to worry about

2     a log.

3          So, otherwise then, unless you have withheld

4     something based on your objections, then you should answer 2

5     completely.

6          I mean, if you have withheld something based on your

7     objections, then you should answer 2 completely.  Otherwise, I

8     think that 2 is complete.

9          MR. BENNETT:  Your Honor, here is the difficulty.

10    We first filed a motion to ask for the production of 30(b)(1),

11    of the actual individuals who conducted the discretionary

12    investigations.  And the defendant opposed it and filed a

13    detailed opposition.  And we negotiated that.

14         And they then -- we have asked for the identities of

15    those individuals.  And we have asked for their names and

16    addresses and contact information.

17         If they are not discretionary employees, our firm

18    already had from a previous case hired an Indian attorney so

19    that we could --

20         THE COURT:  So, you're saying you're missing the

21    contact information for these particular people?  You don't

22    have that anywhere?

23         MR. BENNETT:  No, Judge.  In fact, expressly, it's

24    in the e-mail, Exhibit S, counsel said, we refuse to provide

25    you contact information, not just for these, but for any of

1    their employees.

2          THE COURT:  And is that because you are going to be

3    representing them, that they need to contact you through

4    counsel?

5          MR. RAMANA:  Your Honor, actually, this issue has

6    already been before the Court, it was the subject of their

7    motion initially that was taken off the docket by agreement.

8          What the compromise was the day before the argument

9    on September 6 was that we would provide the 30(b)(1)

10   supervisor --

11         THE COURT:  I remember, I remember that.

12         MR. RAMANA:  -- in lieu of all of these individuals.

13         THE COURT:  Yes.

14         MR. RAMANA:  So, this issue has already been

15   resolved, in our view.  And one of the attachments --

16         THE COURT:  Well, I have to ask, why would you need

17   their contact information at this point if these people are

18   all in India?

19         MR. BENNETT:  Well, Judge, because we asked for this

20   information.  We began the meet and confer when we filed our

21   motion a long time before now, and we actually would have

22   interviewed these individuals.  They can't represent them

23   because they provided a deposition that says they are not

24   managing agents -- I mean, a declaration.

25         THE COURT:  So, you want to be able to call them and

1    interview them and then --

2            MR. BENNETT:  We want to be able to have somebody in

3    India go and get declarations from them, yes, Your Honor.

4            THE COURT:  Well, how are you going to --

5            MR. BENNETT:  How we -- Judge, we took -- in Mullens

6    we took the depositions of the Indian individuals.  In my case

7    in Idaho, the Chilean employees for Experian that do the

8    investigation are already ordered to testify.

9            THE COURT:  Okay.

10           MR. BENNETT:  The difficulty is in combination with

11   the late hour of the supplementation, we're handcuffed.

12           But it doesn't simply apply to these individuals, it

13   applies to others.

14           THE COURT:  What are you going to do with their

15   declaration if you were to get one?

16           MR. BENNETT:  We are moving for summary judgment.

17   And we are going to say that all these individuals do is look

18   at what's on the computer screen at Bank of America, the same

19   as Bank of America did in Johnson, and they are going to not

20   do any substantive investigations.

21           I mean, they are not going to interview the

22   individuals who we have tape recordings of that apologize --

23           THE COURT:  Okay.  So, what you want is their

24   contact information?

25           MR. BENNETT:  I want their -- yes, Judge, we want

1   their contact information and three weeks of additional

2   discovery to contact them.

3          THE COURT:  Okay.  Do you have anything to add as to

4   that, as to the contact information?

5          MR. RAMANA:  Well, Your Honor, in addition to what

6   we have had before, these individuals are not going to know a

7   thing about -- about discovery.  They are Indian employees

8   that do a number of these.

9          This is an issue that came almost a year ago, the

10  cost/benefit analysis.  In addition, this isn't in anybody's

11  favor here, in addition to this.

12         There is an additional element of international

13  discovery problems with this.  And a subpoena would, of

14  course, not be a good idea because it would need to go through

15  a letter rogatory.

16         And in the same type -- my understanding of Indian

17  law is that Indian discovery rules of foreign discovery in

18  Indian territory are very strict.

19         So, while it is easy to say that they are -- they

20  can just contact them and have them sign the document with or

21  without us there, even though we are their employers, there

22  are a host of issues related to that.  Whether we should be

23  there to defend them, whether we should have an opportunity to

24  review all of those declarations.  They are employees of the

25  bank.

1          Now, it doesn't seem to me in the best interests of

2     anybody here -- we have offered to make it actually easier on

3     them by putting up a 30(b)(1) witness who is their supervisor

4     that knows everything in this case that these folks will.  And

5     probably more because they will -- she will be able to talk to

6     them.

7          In fact, she was just -- she actually might still be

8     in India right now.  She was just there.

9          So, we have tried to make it easier on them by

10    bringing someone to Virginia to -- so that he can ask them

11    questions.  Forget the declarations.  He can ask Ms. Ramirez

12    questions.  Ms. Evans, Ms. Ramirez, of course, it's two

13    actually people questions about this particular issue.

14         So, on a cost/benefit analysis, it just seems that

15    trying to compel us to provide contact information so people

16    can go overseas to get declarations, that doesn't make a whole

17    lot of sense when we are offering information, people and a

18    deposition, two depositions in fact, on this exact issue.

19         THE COURT:  What do you think these people are going

20    to say that is different from what the supervisor might say in

21    the deposition?

22         MR. BENNETT:  As in each instance in which we have

23    taken ACDV operators, dozens of times they tell a different

24    story.

25         The professional witness, the litigation liaison

1   witness that travels around and answers questions for a case

2   like this one -- and mind you, we have read the primary

3   witness, we already have her transcript, two depositions she

4   has given in unrelated cases.

5         They don't have the firsthand knowledge of -- and

6   they certainly don't share the trench level knowledge as to

7   how these folks are paid, how they are supervised, how they

8   are audited, what their working environment is like, what the

9   pressure they receive from management might be or might not be

10  to speed through these.  All the same evidence that has been

11  admitted in multiple trials -- trials before.

12        Now, there isn't a basis for an objection, Judge.

13  This is not a burdensome issue.

14        THE COURT:  Okay.  Here is the issue.  I am going to

15  allow you to -- I am going to ask you to please provide the

16  contact information for these ACDV operators.

17        You get your declarations.  Whether they are going

18  to be relevant and whether they are going to be admissible, or

19  whether we are going to allow you to do anything as a result

20  of those, is whole other question.  But I will have them

21  provide the contact information.  Otherwise, I think it's

22  acceptable.

23        Let's go to number 3.

24        MR. BENNETT:  Judge, the one --

25        THE COURT:  We're moving on.  Number 3.  Why is this

1  insufficient, the answer that they have provided?

2          MR. BENNETT:  We will accept number 3, Judge.

3          THE COURT:  Okay.  4.

4          MR. BENNETT:  Whatever -- they have refused to

5  produce the correspondence that relates to our specific

6  plaintiff.  And your question, Your Honor, respectfully, if

7  you believe that that's not -- I don't want to push that

8  issue, but --

9          THE COURT:  It says they are not aware of any

10 unwritten communication from any person.  And then they said

11 that they have already provided you the other communication.

12         MR. BENNETT:  Well, then we're -- then the

13 objection, Judge -- we've asked them to confirm that they are

14 not withholding any evidence based on the objection.

15         THE COURT:  Is there anything in any of these

16 interrogatories that you have semi-answered or partially

17 answered and still restated objections in which you are

18 standing on your objections?

19         MR. RAMANA:  No, Your Honor.

20         THE COURT:  Okay.  Then what I am going to do is as

21 to the ones that you have -- and I will go through them.  In

22 fact, I think from one of the lists that I have written down

23 before, I will going to through them at the end.

24         MR. RAMANA:  Your Honor, may I --

25         THE COURT:  Go ahead.

1          MR. RAMANA:  We are withholding some of them.  On

2    some of them we are completely standing on our objection --

3          THE COURT:  The ones that you are completely

4    standing on your objections, I understand.

5          MR. RAMANA:  Okay.

6          THE COURT:  The ones that you have partially

7    answered, or you have answered subject to the objections, on

8    those, the ones you have answered subject to objections, are

9    you withholding any documents based on your objections or

10   withholding any information based on your objections?

11         MR. RAMANA:  No.

12         THE COURT:  Okay.  Then that's the answer.  And I am

13   striking the objections on the ones you have answered, and I

14   will deem them to be complete otherwise.

15         MR. BENNETT:  Thank you, Judge.

16         THE COURT:  So, I think that 3 is fine.

17         MR. BENNETT:  Yes, Your Honor.

18         THE COURT:  4 I think is also fine.  Do you have

19   anything to add to that one?

20         MR. BENNETT:  Yes, Judge.  We have no idea what they

21   did when they received our clients' disputes.  You have a

22   narrative that doesn't answer the question.  The question is,

23   when you receive -- here is the evidence that ordinarily a

24   defendant would produce.  When we receive a dispute where a

25   consumer says that the debt is paid, we look at the underlying

1    documents.  There is a particular process, a particular

2    procedure.  It is called, Bank of America's credit card arm

3    called desktop procedures, that's what -- that's what its

4    credit card arm used.

5           Desktop procedures that have the step by step, look

6    at this document, look at this document, call this person,

7    verify that the signature on the check belonged to the person

8    making the dispute.

9           And all you have here is this narrative, and it

10   doesn't identify the procedure.  It doesn't identify -- and if

11   you look at A, it doesn't identify even whether these folks in

12   India are actually employed by Bank of America, N.A.  Which is

13   relevant for a number of reasons, including evidentiary

14   reasons when -- if they try to use any evidence of that or we

15   do.

16          They are -- we have also asked for their methods and

17   rates of pay, which are -- which I provided the jury

18   instruction that was given to -- in the most recent FCRA jury

19   in this district.

20          THE COURT:  We're talking about 4 here, are methods

21   and rates of pay.  I don't see how that that is relevant.  I

22   know you have this allegation in here that they get paid bonus

23   or their salary is dependent on how many of these that they

24   process.

25          But as far as I can see, there is no indication any

1   anywhere, even in what you provided to me about your previous

2   cases, that these people are paid for not performing, not

3   correcting credit reports.

4        MR. BENNETT:  But, Judge, the question is, what can

5   lead to discovery of admissible evidence.  Which your

6   assumption --

7        THE COURT:  I don't see how this is relevant.  So,

8   you have got to tell me how it's relevant.

9        MR. BENNETT:  Yes, Your Honor.  The Cushman

10  decision, which was cited, it's the Third Circuit, the lead,

11  original what is an investigation decision, was incorporated

12  and cited in Johnson, the Fourth Circuit's decision.

13       Actually in the opinion, and we cite this

14  specifically, it says a jury could find that because these

15  employees were paid only $7.50 an hour and had to conduct 30

16  investigations, or whatever the number was, I think it was ten

17  investigations an hour, that the jury could find that that was

18  not a reasonable structure to conduct investigations.

19       In Johnson, again opposite the same firm, different

20  lawyers, I am sorry, we had evidence that was admitted on the

21  rate of pay of the MBNA, now Bank of America, employees and

22  how many disputes they had to do an hour.

23       We are entitled to at least know.  The question of

24  whether or not -- if we come back before you and they are

25  moving in limine that this shouldn't go to trial, that is a

1    different question.  We're entitled to know how these

2    employees are incentivized, how they are paid.

3           And I understand it was a different magistrate

4    judge, but we also provided Judge O'Grady's -- in a case again

5    where the same defense team was -- was representing, and that

6    was Capital One, where the cost of the investigation was

7    discoverable.  And it was a contentious motion to compel

8    process with a lot of consideration, with the same type of

9    deep consideration you're providing.

10           But the question is, are we entitled to even know

11   how the eight or nine individuals, who despite tape recorded

12   evidence we have that says, Bank of America, apply these

13   payments to a different account, what these individuals did

14   and how they were incentivized to do that.

15           THE COURT:  Okay.  Anything as to the rest of this

16   interrogatory?

17           MR. BENNETT:  Judge, if we had that -- well, we

18   still don't have the identity of what -- the name of what

19   their procedures are.  We believe now it is called credit

20   reporting portal, from that other document, but they still

21   haven't told us the specifics of what they looked at.

22           THE COURT:  Okay.

23           MR. BENNETT:  And what they did.

24           THE COURT:  I think it's -- I will get to the rate

25   of pay and the method of pay in a moment.  But as far as what

1   they have described here as the steps that they take in their

2   investigation, I think that that's adequate.  And I think that

3   you can go through this and go through what happens with the

4   portal when you take the deposition.

5          Do you have anything to add as to the pay scale?

6          MR. RAMANA:  Well, Your Honor, we don't think this

7   is relevant at all.  This is about whether they conducted a

8   reasonable investigation.  We have given them 600 pages of

9   procedures.  We have given them the products of their

10  investigation.  We have given them what the credit reporting

11  agencies, the ACDVs, come in.  We have given them what goes

12  back out to the credit reporting agencies.  We are giving them

13  witnesses to depose on -- these folks in particular.  We're

14  also giving them a 30(b)(6).

15         I don't know what their costs and their pay has

16  anything to do with what actually happened.  They can look at

17  the procedures, they can look at the --

18         THE COURT:  How are these people paid?  Do you have

19  any idea?

20         MR. RAMANA:  Your Honor, I don't know.

21         THE COURT:  Okay.  I am going to have you supplement

22  this answer to provide how these people are paid.  Not the

23  actual pay for each person involved, but if they are paid on

24  an hourly basis, the range of the pay scale for these

25  operators, and whether their pay has any relationship to the

1    number that they process each day.  And how many that they are

2    supposed to process each day.  And what effect that has on

3    their pay.

4              So, you will have to supplement with regard to that.

5              Let's move on to number 5.

6              MR. BENNETT:  Judge, they identify all these

7    witnesses, page 7.  And they give us no addresses.  We asked

8    for the addresses.  We asked for the last known -- any of the

9    26(a)(1) information, the last known phone number.  We have

10   asked for job description.

11             Again, it's just Judge Payne, but the most recent

12   motion to compel hearing we had in a Fair Credit Reporting Act

13   creditor case, the prior testimony related to the Fair Credit

14   Reporting Act issues, was ordered.  They have not provided any

15   of that.

16             We have these names.  I assume some of them are in

17   India.  I don't know about Zachary Thompson, Cerra Stanley,

18   Ms. Simmons, Ms. DeLeon --

19             THE COURT:  Okay.  Do you have anything to add to

20   number 5?

21             MR. RAMANA:  Your Honor, the interrogatories

22   identify each fact witness.  These are --

23             THE COURT:  Right.  You should be in those

24   particular ones saying what these people know.

25             MR. RAMANA:  Well, to the extent though that none of

1  these folks have anything to do with their credit reporting.

2  These are --

3        THE COURT:  None of them had anything to do with

4  what?

5        MR. RAMANA:  Their credit reporting.  These are

6  names that are taken off of the customer service relationship.

7  And they have the documents and that's where these names are

8  taken from.  We have also cited them to those documents as

9  well.

10        The individuals that are reported here, Mr. Bennett

11  is I think arguing, are the individuals in India who performed

12  the reasonable investigation.  These are customer service

13  representatives.

14        This case, the FCRA portion of this case began in

15  late 2011, early 2012.  These are individuals that -- the

16  Rocabrunas missed a lot of mortgage payments here.  And so,

17  throughout this, what sounds like a very tumultuous process,

18  they dealt with the bank on a regular basis.  These are the

19  individuals that they dealt with on a regular basis about

20  their account payment history.

21        This doesn't have anything to do with the credit

22  reporting part of this case.  And we will probably be moving

23  at some point to exclude a lot of what this is --

24        THE COURT:  Okay, but why didn't you answer in this

25  interrogatory what these people did?  What their knowledge

1    was?

2              MR. RAMANA:  Well --

3              THE COURT:  I mean, if you're saying that these are

4    the people that they dealt with with regard to their payments,

5    why didn't you list the people specifically and say, Tequecia

6    Simmons talked to the plaintiff on three occasions about their

7    late payments, so forth and so on.

8              MR. RAMANA:  So -- and that is, and that's why we

9    referred to the documents here.  If they go to the AS-400 --

10             THE COURT:  Is there a list, I assume, with a lot of

11   these cases, that you have got a chronological list in a

12   computer of who talked to the plaintiffs and on what occasion

13   and what was discussed?

14             MR. RAMANA:  Exactly.

15             THE COURT:  So, that's already been provided?

16             MR. RAMANA:  Exactly.

17             THE COURT:  Okay.  Then why don't you have it?

18             MR. BENNETT:  Judge, I don't know if Ms. DeLeon

19   lives in Chile, if she lives in India, if she lives in

20   Pittsburgh, if she lives in California.  We have asked for the

21   names and addresses and substantive knowledge of these

22   individuals.

23             THE COURT:  Okay, you have the knowledge because

24   that's already in the notes, is it not?

25             MR. BENNETT:  Not all these are in the notes, Your

1    Honor.  And there is not a sheet -- what you have just heard,

2    ask counsel to produce that.  It's not true.  There isn't a

3    document where there is a list of employees that has the

4    breakdown of these.  We don't --

5              THE COURT:  No, no, no.  That's not what he said.

6    That there is a chronological list of what these people talked

7    to the -- to your plaintiffs about on what occasion.

8              MR. BENNETT:  No, Judge, not that they have

9    produced.  There is coding, employee number X56.

10             Even when we have tried to guess -- you see in the

11   deposition part of our brief we asked for Ms. Hill.  And the

12   defendant says, well, we don't even know if there is a Ms.

13   Hill.

14             Well, that is somebody who we have a tape recording

15   of, and they won't give us that person for a 30(b)(1).

16             THE COURT:  Okay.

17             MR. BENNETT:  And so, we're --

18             THE COURT:  Then you're going to have to supplement

19   this to provide their addresses and their contact information.

20   But you're also going to have to give them, with either the

21   coding for their employee number so that they can identify who

22   was talking to the plaintiffs, or revise the actual

23   production, the document and supplement it to show who --

24   identify who each person was on which occasion talking to the

25   plaintiffs.

1          MR. RAMANA:  Your Honor, I am perfectly happy to do

2     that to the extent we haven't.  If we have -- what I will do

3     is I will just provide them the Bates numbers because I know

4     that we have produced the answer --

5          THE COURT:  Okay.  Well, then you're going to have

6     to point it out to him.

7          Let's go on to number 6.

8          MR. BENNETT:  Judge, and this is the same problem --

9          THE COURT:  This I have no idea why this is relevant

10    at all.

11         MR. BENNETT:  Well, Judge, because they won't give

12    us the Indian employees that counsel just moments ago, two

13    sentences ago said, the relevant evidence, Judge, is what our

14    Indian employees did to reasonably investigate.

15         Well, they won't identify them.  They won't provide

16    addresses.  They won't produce them for witnesses.  And I am

17    not allowed to have discovery past the 18th.  Which means the

18    deposition they have offered on the 19th of their supervisor

19    is impossible.

20         THE COURT:  Well, you can have the deposition on the

21    19th.  So, let' go -- go ahead.

22         MR. BENNETT:  So, Judge, I'm asking -- first they

23    identified Sandra Evans.

24         THE COURT:  Yes.

25         MR. BENNETT:  If you look at the interrogatory.

```
 1            THE COURT:  I see.  And Debbie Ramirez.

 2            MR. BENNETT:  Then I produced Ms. Evans' deposition

 3  where she said in late 2010, I have never been to India,

 4  that's not my job.  And we met and conferred with counsel.

 5  And he said, wow, I am surprised.

 6            And the difficulty here is that the opening

 7  discussion of firm is that it's Bank of America that is

 8  running -- is providing the information.  And in this

 9  instance, counsel -- it wasn't counsel's fault.  They were

10  told that Ms. Evans had been to India.  We provided the

11  deposition, which blindsided counsel, and established that was

12  untrue.

13            Ms. Ramirez, they've only identified -- this is the

14  first pleading or discovery response where her name came in.

15  And she was first offered in the meet and confer discussion a

16  week ago.  So, that's the first time we have heard of her.  We

17  don't have any other information about her.

18            And so, we're asking in an interrogatory, when did

19  you go to India?  How often do you supervise these employees?

20  You claim that you know what they do, you know what their

21  procedures are, you train them --

22            THE COURT:  But the thing is, what your clients are

23  complaining about occurred when?

24            MR. BENNETT:  2000 -- in India, the Indian part of

25  it, almost immediately because --
```

1          THE COURT:  No, what year are we talking about?

2          MR. BENNETT:  2010, '11 and '12.

3          THE COURT:  '11 and '12 as well?

4          MR. BENNETT:  Yes, Your Honor.

5          THE COURT:  All right.

6          MR. BENNETT:  I mean, it is still in my client's

7    credit report.  And it was Indian employees that first

8    misapplied the payments to their bank accounts that started

9    this whole thing.

10          THE COURT:  I don't know that that's the case.  All

11   right, let's see why haven't you answered this completely as

12   to Ms. Ramirez?  She supervised from 2010 to the present, and

13   that's the years that he's complaining about.

14          MR. RAMANA:  She is 2011 and 2012.  They are going

15   to have an opportunity to depose her, of course, next week.

16   And so, they can ask all the questions that they want.

17          THE COURT:  Okay.  Then why can't we just do that

18   then?

19          MR. BENNETT:  Because I go into a deposition where

20   -- the last FCRA verdict was a $700,000 verdict against a

21   furnisher.  And I am going to go into a deposition not knowing

22   a thing about this woman, not knowing when she went to India,

23   where she works, what her office is --

24          THE COURT:  Well, you are going to ask her, aren't

25   you?

1          MR. BENNETT:  But I don't have any documents -- I am

2    supposed to prepare my case.  This isn't a discovery

3    deposition, Judge?  I don't have time --

4          THE COURT:  Have you got -- have the documents been

5    produced?

6          MR. BENNETT:  -- to do discovery.

7          THE COURT:  Have you produced the documents?

8          MR. RAMANA:  Yes, we have, every --

9          MR. BENNETT:  I haven't --

10         MR. RAMANA:  I don't know what else he wants.

11         MR. BENNETT:  There is not a page about India, not a

12   single page, not a single word in a single page.  Not even the

13   word "India" is not in any page.  There is nothing.

14         THE COURT:  Have you got any documents regarding her

15   visits to India?

16         MR. RAMANA:  Not Ms. Ramirez' visits to India.

17         THE COURT:  Okay, you're going to have to produce

18   those before her deposition.

19         MR. RAMANA:  Right.  Okay.  Travel documents, is

20   that --

21         THE COURT:  No.  I don't know if she has any notes

22   of her meetings in India or what she did --

23         MR. RAMANA:  Substantive.

24         THE COURT:  Substantively to reflect.

25         MR. BENNETT:  If she is supposed to be the trainer,

1    what documents does she use to go and train these individuals,

2    those types of documents.

3              THE COURT:  Right.  So, produce those before the

4    deposition.  What day is the deposition?

5              MR. RAMANA:  I believe hers is the 19th, is that

6    right?  A week from today.

7              THE COURT:  A week from today.  So, produce them by

8    Tuesday.

9              MR. RAMANA:  All right.

10             THE COURT:  Let's go on to 7.

11             MR. BENNETT:  We have asked for the training

12    documents to train the ACDV operators that did the

13    investigation.  And they haven't produced a single piece of

14    paper, including the Bates range that is cited there.

15             We have all these documents here in court with us,

16    Your Honor.  They have not produced a single piece of paper

17    about how they're supervised, how they are audited, how

18    they're trained.

19             THE COURT:  Identify all documents prepared by or on

20    behalf of you used in connection with the contracting,

21    training, instruction, supervision, or evaluation of any of

22    your employees or of any third party or its employees paid by

23    you who is identified in your response to these

24    interrogatories.

25             MR. BENNETT:  And, Judge, in the meet and confer it

1   was dramatically narrowed in scope to just be the ACDV

2   investigation employees.

3            THE COURT:  Okay.  So, he says that he has produced

4   them.

5            MR. BENNETT:  Well, Judge, if you would like, we

6   have that document.  If counsel is going to represent to the

7   Court here that they have produced the documents regarding how

8   those individuals are trained, supervised and audited, we can

9   pull out 2260 to 2439.  But that's not true.

10           And I think counsel would acknowledge that that

11   document has nothing to do with what goes on in India.  It has

12   nothing to do with the ACDV investigation.

13           THE COURT:  All right.  Do you have anything to add

14   to that?

15           MR. RAMANA:  Part of the problem here is that you

16   can see that these are so overbroad that it is --

17           THE COURT:  They are, but he said that you have

18   narrowed this to the ACDV operators during the relevant time

19   period, is that correct?

20           MR. RAMANA:  Well, yes, but maybe there is something

21   that we haven't produced that I don't know of that he does.

22   And it would be helpful if he would just tell us what the

23   document is.

24           THE COURT:  What is it you're looking for then?

25           MR. BENNETT:  I'm looking for what these employees

1    are trained with to conduct an investigation.  How they are

2    supervised or audited to make sure they are doing their job.

3    Most every company, including Bank of America's credit card,

4    has random or periodic audits to double-check.

5         And you have already addressed the question with

6    respect to what we can discover.  The structure of their pay,

7    how they are incentivized or not incentivized to put speed

8    over substance.

9         THE COURT:  Any problem with producing that?

10        MR. RAMANA:  Well, that's the next category.  And we

11   produced documents that we believe fall into that category.

12   But if there is something specific that he knows -- part of

13   this, and I am interrupting myself, we don't believe that some

14   of these documents are at all relevant.

15        What is relevant in this case is the conduct.  There

16   will be jury instructions on willfulness and whether something

17   was a reasonable investigation.  It's the conduct and the

18   outcomes and the procedures that were in place at the time

19   that are important for the jury.

20        How someone was trained two years before that or

21   how -- you know --

22        THE COURT:  Well, it's the procedures that were in

23   place at the time that this dispute occurred.

24        MR. RAMANA:  We have given them 600 pages of what

25   they are supposed to do and what they are supposed to click --

1          THE COURT:  Okay.

2          MR. RAMANA:  -- when they get an ACDV, for audits,

3    and for denials of -- when they deny --

4          THE COURT:  For the ACDV operators?

5          MR. RAMANA:  For the ACDVs.  There are 600 pages.

6          THE COURT:  What date, what Bates date -- do you

7    know what Bates numbers they are?

8          MR. RAMANA:  We have those are in our brief, but

9    there is even more -- the briefs --

10          MR. BENNETT:  Exhibit A, Judge.

11          MR. RAMANA:  Well, that's part of it.  The Bates

12    range is 1627 to 2253.  That's the 650.  That's in addition to

13    what we produced on Wednesday.  The ones in our -- we have

14    narrowed it even more than that to particular Bates, and I

15    will do it again, 1799 to 1802.

16          I think that's the procedure people get, what they

17    are trained on on what to click on when they are denying a

18    dispute.  I think it says that at the top.

19          THE COURT:  So, that's an additional Bates range

20    that you don't have in this particular answer?  The numbers

21    that you just told me are different than what are down here.

22          MR. RAMANA:  Yeah, I would be happy to -- I don't

23    know what you have in front of you right now.  I would be

24    happy to make sure --

25          THE COURT:  I have your objections and answers.

1          MR. RAMANA:  Supplement --

2          THE COURT:  It says -- well, it just says objections

3     and answers, but it is dated yesterday.  Or Wednesday.

4          MR. RAMANA:  Yeah, 1799 to 1802.  I would be happy

5     to make sure that they have all those Bates numbers.

6          THE COURT:  Okay.

7          MR. RAMANA:  But it's 650 pages of documents.  I

8     would be happy to --

9          THE COURT:  Then what you need to do is supplement

10    that answer to identify all the Bates numbers that are

11    relevant to that.

12         MR. RAMANA:  Sure.

13         MR. BENNETT:  And, Judge, there is not a piece of

14    paper at all that in any way deals with India.

15         THE COURT:  He just said that he did.  He just said

16    that he produced this as regards the ACDV operators.  So, what

17    am I supposed to do?

18         MR. BENNETT:  Judge, they claimed that.  In their

19    brief they said they did.  I attached the document.  You have

20    the document.  I created a pdf with their excerpts as Exhibit

21    A, and that's the --

22         THE COURT:  He has got 500 pages that he said he

23    produced --

24         MR. BENNETT:  But they don't have anything to do

25    with -- Judge, they have nothing -- they have to do with --

1    the two parts of this case are the direct contacts where the

2    consumer is saying, you have lost my payment.  And that's

3    under the Real Estate Settlement Procedures Act, RESPA,

4    qualified written requests in that.

5            THE COURT:  Okay, all right.

6            MR. BENNETT:  95 percent of their process documents

7    are only that.

8            THE COURT:  Okay.

9            MR. BENNETT:  They have 5 percent that deal with

10   other issues that may tangentially deal with credit reporting,

11   but not the ACDV investigation procedure done by the Indian

12   operators.

13           THE COURT:  Okay.  Here is what you're going to have

14   to do.  You're going to have to talk.  You're going to have to

15   identify to him which Bates numbers it is.

16           You are going to have to have a discussion with him

17   where you are specific about what you think you're missing.

18   And look at the Bates numbers that he is identifying.  I can't

19   do this.  I don't have the documents here.

20           No, I know you have your piece of paper, I don't

21   have the 500 pages that he tells me he produced.  And I

22   haven't looked at them.

23           And you know what, you don't want me looking at

24   them.  I will tell you that much.  Neither side wants me to

25   have to sort through your discovery to see if you have

1    produced what you say you produced or if you have interpreted

2    what they say that they have produced correctly.

3            So, you're going to have to talk to each other.  And

4    if you feel like you really need to bring another motion to

5    compel based on that, after you talk and go through these

6    documents together, then you can do that.  And if it's after

7    the time period within a couple of weeks, I'll deal with the

8    time period.

9            But I'm not going to back and forth with, I produced

10   it, and they didn't produce it.  And how to you expect me to

11   sort that out when I don't have your boxes of documents here?

12   And it's not going to happen.

13           So, you all have to talk about this.  And if you

14   cannot resolve it on your own, then you bring an appropriate

15   motion quickly.

16           MR. BENNETT:  Judge --

17           THE COURT:  Okay.  So, let's move on.

18           MR. BENNETT:  I also don't think counsel is

19   suggesting that they have produced anything about how these

20   employees are supervised or the structure of that.

21           THE COURT:  You are going to have to go through

22   this.  I don't know.

23           MR. BENNETT:  Well, counsel, you --

24           THE COURT:  I am not going to go on forever.  We

25   have now spent 50 minutes and we are still at the very

1   beginning of your questions.  I am not going to spend the

2   entire day arguing with you about this and going back and

3   forth.  You all are going to have to sit down and talk about

4   this over the next week and sort it out and then bring a

5   motion to me specifically.  Okay.

6           MR. BENNETT:  Judge --

7           THE COURT:  Go on.  I am not talking about this any

8   more.  8.

9           MR. BENNETT:  We will live with their answer to 8.

10          THE COURT:  Okay, 9.

11          MR. BENNETT:  We are entitled to -- the <u>Dalton</u> case,

12   the Fourth Circuit, respectfully, it's not this Court, but

13   literally 100 percent of every court that has considered it in

14   Richmond and one judge here has found that notice of prior

15   lawsuits is --

16          THE COURT:  You already know about a whole bunch of

17   them, it seems like.

18          MR. BENNETT:  Judge, I don't know about a whole

19   bunch of them under the 1681s.2(b).  And respectfully, Judge,

20   in their brief the reason why they say they shouldn't have to

21   produce it is they say it would be too burdensome.  That's the

22   only reason --

23          THE COURT:  How many are we talking about here?

24          MR. BENNETT:  Well -- and that's not their

25   objection, Judge.

1          THE COURT:  I'm asking them.

2          MR. RAMANA:  The Court's --

3          THE COURT:  You know, what?

4          MR. BENNETT:  I'm sorry.

5          THE COURT:  You're going to have to back off just a

6    little bit.

7          MR. BENNETT:  Yes, Judge.

8          THE COURT:  How many are there we're talking about?

9          MR. RAMANA:  I don't know, I don't know how many

10   there are.  The problem with this is that there is not central

11   repository.  What we have to do is go through the litigation,

12   talk to all the in-house counsel over the past, I think

13   counsel did limit it to 2008 --

14         THE COURT:  '8, 2008.

15         MR. RAMANA:  But we have to go through, talk to all

16   of them.  And the problem is, a lot of those cases may not

17   have any type of factual similarity to the ones here.

18         THE COURT:  True.

19         MR. RAMANA:  So, then what we would have to do is

20   kind of do their work for them, figure out which ones were

21   factually similar, go through it.  I think they have asked for

22   all sorts of different information on each of them.  There is

23   -- we don't have a file that says all FCRA cases that are like

24   the Rocabrunas in a central repository.

25         So, it doesn't make sense for us to do that.  It's

1  just completely burdensome and it has nothing to do -- if she

2  wants to ask, counsel, our 30(b)(6), have you ever been sued?

3  Yes.  How many times?  Then --

4         THE COURT:  Well, is she going to know the answer to

5  that?

6         MR. RAMANA:  Probably not.

7         THE COURT:  Yeah.

8         MR. RAMANA:  Because there is no way to really know

9  this in any type of meaningful way.  And so -- so, you know,

10  obviously, we are aware of our FCRA obligations because we

11  have produced hundreds of pages of FCRA, how to respond to

12  FCRA.  If that's the notice issue, that's fine.

13         But this doesn't make any sense for us to have to

14  respond to this.

15         THE COURT:  I would like to have some idea of the

16  number that we're talking about.  I have got a feeling that

17  it's probably in the hundreds though.

18         MR. RAMANA:  I would say at a minimum it's probably

19  in the hundreds in the lines of what --

20         THE COURT:  I have got a feeling too.  So, why would

21  those be relevant and why would they have to sort through all

22  of these?

23         MR. BENNETT:  Well, two questions.  The first is

24  with respect to the second, the burden.  They didn't object on

25  that.  We didn't meet and confer based on that.  That was

1   never asserted to us in the hours and hours of meet and confer

2   efforts.

3          THE COURT:  Okay.  What else?

4          MR. BENNETT:  And it's not an objection.  With

5   respect to relevance, we cited expressly out of the case of

6   Dalton --

7          THE COURT:  And I think that these are both

8   intertwined because the problem is, as he said, you're talking

9   about -- I mean, I'm just thinking about the numbers that we

10  see in this court alone.  Hundreds of suits across the country

11  that they'd have to sort through and figure out whether it

12  involved anything like this case or not.

13         MR. BENNETT:  It only has to be produce the

14  complaints, we offered in meet and confer, that were filed

15  alleging a claim under the s.2(b) of the Fair Credit Reporting

16  Act.

17         THE COURT:  And how are they going to sort that out?

18  What do you think, they have got it in a computer program?

19         MR. BENNETT:  Yes, they do, Judge.

20         THE COURT:  I doubt it.  Really?  As to the numbers

21  that are filed under which statute?

22         MR. BENNETT:  They have the complaints.  And if we

23  have to pay for them, we will pay for the copies of them all.

24  Just as Judge Payne ordered we had to pay the costs in the

25  James matter.  The question in this circumstance, the --

1          THE COURT:  I don't even know what you would do with

2     them.  What if they were dismissed on summary judgment?  What

3     if they were dismissed on a motion to dismiss at the outset?

4     How would that have any bearing on anything?

5          MR. BENNETT:  Well --

6          THE COURT:  Why wouldn't that be just a complete

7     waste of time when I have to know, just based on my own

8     experience, that we're talking about at least hundreds of

9     cases across the country?

10          MR. BENNETT:  Well, Judge, the question, and the way

11     it was stated in the per curiam in Dalton, the Fourth

12     Circuit's decision, was notice that consumers have brought

13     similar complaints under the Fair Credit Reporting Act against

14     that defendant.  It's the notice --

15          THE COURT:  I bet you you could stipulate that

16     consumers have brought complaints to you under this act, have

17     they not?

18          MR. RAMANA:  I'm sure they have.

19          THE COURT:  Yeah, really.  So what?

20          MR. BENNETT:  Because, Judge, if they continue to

21     simply robotically process consumer disputes, despite that

22     they have been sued by -- and it's not hundreds, I am sure

23     it's probably thousands --

24          THE COURT:  Thousands.

25          MR. BENNETT:  -- of consumers who allege that this

1   defendant --

2              THE COURT:  Yeah.  Is the defendant in any way,

3   shape or form going to take the stand at trial that they

4   didn't know about this obligation, or that no consumers ever

5   complained to them?

6              MR. RAMANA:  Not at all.

7              THE COURT:  Okay, all right.  If they say anything

8   different at trial, then we can take it up at trial.

9   Otherwise 9 is denied.

10             10.  Let's move on.

11             MR. BENNETT:  And, Judge --

12             THE COURT:  I am not going to argue again once I

13  have ruled --

14             MR. BENNETT:  I am not arguing with you.

15             THE COURT:  Then why are you speaking about 9 again?

16             MR. BENNETT:  Because at the 30(b)(6), if the

17  defendants suggest, and Your Honor had suggested, if they

18  answer questions about, about their knowledge of these --

19             THE COURT:  Okay.  You know what, I am not going to

20  go through these and argue on them again with you once I have

21  ruled.  I have ruled on 9.

22             And you know what, I am just about out of patience

23  with this because it is taking so long to go through each one.

24             10 is the last one I think that I have to deal with

25  -- or, 11, excuse me, on this set.  So, we are going to go on

1  to 10.  And then we are going to go through the requests for

2  production of documents.  And I am not going to go through

3  each one and have you argue each one to me for 15 minutes and

4  then reargue it again.  I am going to tell you what my answer

5  is on the requests for production of documents as soon as I

6  get through these interrogatories.  I have got a whole list of

7  them, and I am just going to tell you how I rule.  I will let

8  you argue generally as to them, but I am not going to go

9  through them all.

10       So, 10.

11       MR. BENNETT:  10 we have asked -- you have addressed

12  this.  You have told us to meet and confer again, to have them

13  show us what documents the Indian ACDV operators were trained.

14  So, you've already addressed this.

15       My assumption or my interpretation is that you have

16  ordered -- they said they produced it.  As long as they've

17  produced it, it's resolved.  And if they don't produce it,

18  it's unresolved.  But you would have already addressed 10.

19       And 11, in their supplementation yesterday they have

20  now produced the credit reporting history, screen prints.  And

21  so, 11 is resolved.

22       THE COURT:  Okay.  So 10 and 11 are done.

23       All right, let's go to the requests for production

24  of documents.  And you can give this back to counsel for the

25  plaintiff.

1          MR. BENNETT:  Judge, may we file that document?

2          THE COURT:  You want me to put it in with this?

3          MR. BENNETT:  Please, for the record, Your Honor.

4          THE COURT:  Okay.  I thought that was your copy.  We

5   will keep that then.

6          All right, do you have anything to add to your

7   requests for production of documents/motion to compel

8   generally?

9          I mean, do you need to tell me anything in addition

10  to what you've already put in your briefs?  Because I have

11  read the briefs.  And I am ready to rule unless there is

12  something additional that you have not already put in your

13  briefs.

14          MR. BENNETT:  The only thing I would add is the

15  Court's assumption of good faith by both parties, fair

16  assumption under most all circumstances, and your suggestion

17  in the interrogatories with respect to identification of

18  documents, that we meet and confer again, and that the

19  defendant identify the documents by which its Indian ACDV

20  employees are supervised, trained and audited.

21          If that is the ruling, the defendant produces those,

22  but they need to -- if they've already produced them, they've

23  already produced them, then that resolves a significant number

24  of these RFPs.

25          THE COURT:  Okay.  Then what's not been resolved?

1          MR. BENNETT:  Judge, one of the issues is net worth.

2     The defendant -- net worth is not something you find in a

3     shareholders report.

4          Now, we have asked a 30(b)(6) topic of net worth.

5     And if they produce a witness that says this is the net worth,

6     then that's fine.

7          If they are required to provide a sealed stipulation

8     that is opened only at the point where punitive damages

9     survive summary judgment, that's fine.

10         THE COURT:  Okay.  All right.  What number was that

11    one?  I forget.

12         MR. RAMANA:  It is request 20, Your Honor.

13         THE COURT:  1?

14         MR. BENNETT:  20, Judge.

15         MR. RAMANA:  20.

16         THE COURT:  20.  Okay.  All right.  Anything else

17    specifically that is still in dispute?

18         MR. BENNETT:  The other thing that we have that is

19    in here that you have not already ruled on is the -- there are

20    two claims.  One of them is you failed to investigate.  And

21    the other is you failed to note an account as disputed.  And

22    we mentioned the Saunders case, that was that decision.

23         And there is something called the Compliance

24    Condition Code, the CCC.  We have asked for documents in which

25    this defendant provides its knowledge and information and

1   notice regarding the use of the --

2          THE COURT:  Which number are we talking about?

3          MR. BENNETT:  I just had it in front of me.  Well,

4   the easiest is in request number 2, Your Honor, where we ask

5   for the CDIAs, which we corrected in our meet and confer, not

6   DCIA, procedures for how to report.

7          THE COURT:  Wait a minute, requests for production

8   of documents number 2?

9          MR. BENNETT:  Or 3, I am sorry, Your Honor.  Request

10  number 3.  And --

11         THE COURT:  All documents communicated to or from

12  you and any credit reporting agency or the DCIA regarding the

13  procedures you were to follow under Metro-2 when reporting a

14  mortgage loan that was involved in a loan modification, is

15  that it?

16         MR. BENNETT:  That is, Judge.  The CDIA --

17         THE COURT:  So, they are saying they produced that

18  under 2.

19         MR. BENNETT:  Which they haven't done, Judge.  They

20  haven't produced -- they produced one document, which is

21  exchanged from the CDIA, that's what you have Exhibit B in the

22  sealed envelope.  And that's how to access the credit

23  reporting e-OSCAR computer.

24         But the actual -- there is something called the

25  credit reporting resource guide.  And a number, and training

1    Webinars and that by which the industry, credit reporting

2    industries has trained Bank of America -- and we now have

3    invoices in third party discovery from the CDIA --

4              THE COURT:  Okay.  Have you produced that?

5              MR. RAMANA:  Your Honor, I don't think we produced

6    that.  I believe these were produced, and I may be wrong about

7    this, I believe that the CDIA has actually produced that

8    pursuant to the subpoena at this point.  So --

9              THE COURT:  Have they?  Have you got it?

10             MR. BENNETT:  No.  Judge, they produced something

11   called the credit reporting resource guide, and they produced

12   an invoice that shows training that they went to.

13             THE COURT:  Then say again what specifically you

14   think you're missing.

15             MR. BENNETT:  I'm missing the documents that Bank of

16   America's compliance employees received from the Consumer Data

17   Industry Association, CDIA, in which Bank of America was

18   informed as to the proper way to credit report an account like

19   the one in this case.

20             MR. RAMANA:  But that's a broad generic pattern --

21             THE COURT:  You think there is one document, one

22   specific manual?

23             MR. BENNETT:  No.  I think -- well, there are

24   training Webinars, PowerPoints that Bank of America employees

25   would receive.

57

1          THE COURT:  Okay.

2          MR. BENNETT:  And it's a normal document that most

3    any furnisher in discovery, it's in their first set of

4    productions.

5          THE COURT:  All right.

6          MR. RAMANA:  The trouble -- but I don't see how that

7    is remotely relevant to this case.  This case is about whether

8    the Rocabrunas had inaccurate credit reporting and failure to

9    investigate these.  What the industry standard is on a Metro-2

10   computer format, on how this was coded in India, is something

11   that --

12         THE COURT:  Okay.  I mean, you're going to have to

13   produce it.  I want you guys -- if you don't understand what

14   he just said, talk after court, make sure you have got a

15   complete list of what it is he is looking at that.  But you

16   are going to have to produce that.

17         Anything else?

18         MR. BENNETT:  The only thing, we would narrow

19   request 15 considerably.  We already narrowed it considerably.

20   And we would simply ask --

21         THE COURT:  Why would you need this?

22         MR. BENNETT:  We would ask -- the only thing we

23   would ask for would be the employee audit forms for the

24   individuals that conducted the ACDV investigations for our

25   clients.  So that --

1    THE COURT:  Do you mean their annual review?

2    MR. BENNETT:  Yes.

3    THE COURT:  What do you mean, audit forms?

4    MR. BENNETT:  Well, there are periodic audits that

5 are done to make sure that they are following Bank of

6 America's procedures.

7    THE COURT:  Okay.

8    MR. BENNETT:  And there is an annual review that is

9 done that determines -- so, for example, this person gets it

10 right 78 out of 100 times, or those types of things.  I mean,

11 we're seeking -- if we cannot --

12    THE COURT:  So, you want the annual performance

13 review and the audit reports?

14    MR. BENNETT:  Yes, Your Honor.

15    THE COURT:  For the particular people who dealt with

16 these plaintiffs in India?

17    MR. BENNETT:  That's the only ones we're asking for.

18    THE COURT:  All right.  Any problem --

19    MR. RAMANA:  Your Honor, there are huge privacy

20 issues associated with the --

21    THE COURT:  Well, privacy has nothing to do with it.

22 We have got a protective order.  Okay.

23    So, what else?

24    MR. RAMANA:  But I don't understand why any of other

25 audits or the entire personnel files of these individuals, how

1    that would even play -- we are not putting these up, these

2    individuals up at trial.  We are not -- this doesn't have

3    anything to do with --

4            THE COURT:  If these employees have chronic problems

5    with their performance, I think it's relevant.  So, you're

6    going to have to produce the audit reports and the annual

7    performance reviews for those particular employees who dealt

8    with them from India.

9            Anything else specifically that you think has not

10   been resolved?

11           MR. BENNETT:  I don't think -- if I can answer a

12   different question.  There is nothing else in here --

13   certainly unresolved, but nothing that Your Honor has not

14   already heard me speak about.

15           THE COURT:  Okay.  Then let's move on to 20, which

16   is the net worth statement.  Is there any problem with a

17   stipulation?

18           MR. RAMANA:  Your Honor, there is a 10K that is

19   available to them.  I suppose we can offer to produce the 10K.

20   It is publicly available.  I think that would have --

21           THE COURT:  You either produce that or you produce a

22   stipulation of net worth, one or the other.  Okay.

23           MR. RAMANA:  Okay.

24           THE COURT:  Anything else with regard to the

25   requests for production of documents?  Okay.

1          Then let's move on to the documents, the 30(b)(6)

2   objections.  Have you narrowed that at all?

3          MR. BENNETT:  Well, we had narrowed them, yes,

4   Judge.  The 30(b)(6) communication we received from counsel

5   though was an e-mail, which we produced, in which counsel

6   said, there are five of these that we're not going to agree to

7   produce anyone on, but we're not withdrawing any of our other

8   objections.

9          And so, I am not, even to this point, sure what --

10          THE COURT:  I have got the list of 30(b)(6)

11   deposition topics here.  So, rather than having me go back

12   through the e-mails and correspond -- I mean, correlate them,

13   which five are they not going to answer at all that they have

14   now said?

15          MR. BENNETT:  As you can see, we will not be

16   offering corporate witnesses for topics number 2 -- I am

17   sorry, it is seven -- I mean, it is seven topics.  So, number

18   2.

19          THE COURT:  Yeah.

20          MR. BENNETT:  Number 11.  Number 13.  Number 16.

21   Number 18.  And then numbers 24 and 25.

22          THE COURT:  Okay.  And the rest they said they are

23   standing on their objections, but they will answer them?

24          MR. BENNETT:  Yes.

25          MR. RAMANA:  No.  The idea is we are producing, in

1    the other ones, a witness to testify to everything that they

2    are asking for as it relates to this case.

3         THE COURT:  Okay.

4         MR. RAMANA:  If there was a process in this case,

5    you'll get it from us.  If there are facts in this case,

6    that's fine.

7         What we don't want is free rein at 30(b)(6) --

8         THE COURT:  Okay.  I noticed in your objections how

9    you proposed to modify these.  Okay.

10        Do you have anything to add to those?

11        MR. BENNETT:  Well, the one difficulty, Judge, is

12   that we have to prove willfulness.  That is, we have to prove

13   a pattern of conduct.

14        And so, if we're limited simply to -- and we're not

15   even limited because the defendant -- we're still trying to

16   learn what was done with the particular plaintiffs' disputes,

17   the ACDV operators in India.

18        But beyond that, we have to prove knowledge, notice,

19   and a pattern of conduct.  And if we can --

20        THE COURT:  You told me this.  Well, what's the

21   point about these specific ones?  What I want to know is

22   what's wrong with the modifications that they have proposed

23   otherwise?  Because I think you really only have -- that you

24   -- even if you're trying to prove what you think you have to

25   prove there, you still are limited to what -- similar types of

62

1    cases.  Not just Bank of America generally and what a screw-up

2    they are with regard to consumers.  It's how is it in this

3    narrow context with the type of complaint that your client

4    has.

5             MR. BENNETT:  Well, the complaint our client has is

6    the defendant did not look at underlying substantive documents

7    or look outside of its own computer screen.

8             THE COURT:  Okay.

9             MR. BENNETT:  That's the claim.

10            THE COURT:  I understand -- Gosh.

11            MR. BENNETT:  I am sorry, I am not understanding

12   you, Your Honor.

13            THE COURT:  You are frustrating me.  The question

14   is, they have represented that the modifications they have

15   proposed to all of the others -- or the ones that they are

16   objecting to and the proposed modifications, other than the

17   seven that they say that they are not going to answer, they

18   have related that they are willing to answer them as they

19   relate to your client and your client's situation.

20            So, what's wrong with that, is my question?

21            MR. BENNETT:  Well, if you look at topic 3 -- I am

22   not sure how that works, Your Honor, but there might not be

23   anything wrong with it.  But say, for example, topic 3 on

24   willfulness, what did Bank of America do to inform itself of

25   its obligations under the Fair Credit Reporting Act provision

1    litigated in this case, 1681s.2(b).

2              THE COURT:  Isn't that a little broad?

3              MR. BENNETT:  Well, it is a 30(b)(6) topic.  But do

4    they have a compliance program, do they review --

5              THE COURT:  I don't know how you would even prepare

6    somebody for that.  I don't even know how you would prepare

7    somebody for it.  It's so broad.

8              MR. BENNETT:  A process that is used to make sure

9    that its procedures comply with the Fair Credit Reporting Act.

10             THE COURT:  Okay.

11             MR. BENNETT:  The Seventh Circuit decision, it

12   became Gillespie, was a case where the fact that the legal

13   team didn't make regular updates to review.

14             THE COURT:  Okay.

15             MR. BENNETT:  I mean, I --

16             THE COURT:  Any others you want to talk about?

17             MR. BENNETT:  5, you have already ruled that their

18   knowledge of the previous -- the Fourth Circuit decisions on

19   the interrogatories.  But I think under 30(b)(6), Your Honor,

20   the knowledge -- that's even more narrow.  So, if you thought

21   that --

22             THE COURT:  You think that that topic is narrow?

23             MR. BENNETT:  Their knowledge of these two court

24   decisions --

25             THE COURT:  Look, look at that topic.  You think

1    that that is narrow?

2              MR. BENNETT:  From a 30(b)(6), is what is the

3    corporate understanding of its obligations under those two

4    statutes, Judge.

5              THE COURT:  Okay.  Anything else?  I'm asking you.

6    This is your chance, anything else as to these specifically?

7    Because I have got my list ready to go.

8              MR. BENNETT:  Well, Judge, if your list is going to

9    be the outcome in the case, I don't --

10             THE COURT:  You can appeal me.

11             MR. BENNETT:  I understand I can, Judge.

12             THE COURT:  Okay.

13             MR. BENNETT:  I am not big on appealing judges.

14             THE COURT:  If you don't have anything else to talk

15   about with regard to the 30(b)(6) then --

16             MR. BENNETT:  Well, beyond what -- topic 8, Judge,

17   we have asked for their knowledge of the CDIA's Metro-2

18   format.  And we have a meet and confer where we narrowed and

19   explained these to counsel.  But we would ask for their

20   knowledge of the compliance condition code field.  We would

21   narrow that even further.  So --

22             THE COURT:  Compliance condition code?

23             MR. BENNETT:  The compliance code field.  They are

24   obligated by industry standard to report that an account is

25   disputed.

1          THE COURT:  Right.  Well, you say Bank of America's

2    knowledge of it.  What exactly do you even mean by that?

3          MR. BENNETT:  It is a 30(b)(6).

4          THE COURT:  I know that.  For God sakes.  Really,

5    what do you think I am?  Dense.  I know this is a 30(b)(6).

6          How is this topic in any way narrow enough for them

7    to prepare a witness to answer this?  Bank of America's

8    knowledge.  Really, what the heck does that mean?

9          And that's a serious question.  This one of the

10   broadest topics I think I have every seen.

11         MR. BENNETT:  Judge, the 30(b)(6) is deposing a --

12   if this were --

13         THE COURT:  Dag gone.

14         MR. BENNETT:  If I were asking Sandra Evans, what is

15   your knowledge of the compliance condition code reporting

16   procedure, what is Sandra Evans' knowledge -- and that

17   wouldn't be a deposition question that would be seen as

18   unreasonable, I don't believe.

19         What makes it unreasonable is that we're asking it

20   of a corporate entity.

21         THE COURT:  Yeah.

22         MR. BENNETT:  And that's what 30(b)(6) does.  The

23   alternative to 30(b)(6) --

24         THE COURT:  Okay.

25         MR. BENNETT:  -- as Your Honor knows, is we can

1    notice a 30(b)(1) of the individual in charge of the legal

2    department.  In which case, had we done that --

3             THE COURT:  I am not sure that it's -- I am not sure

4    why you would need to ask that question generally anyway.

5             MR. BENNETT:  Because we have to prove they had

6    knowledge of the law --

7             THE COURT:  Don't you -- they are obliged to know

8    what the law is.

9             MR. BENNETT:  If they --

10            THE COURT:  They have an obligation to know what the

11   law is.  And I don't think that Bank of America is ever going

12   to put a witness on the stand who is going to say, we didn't

13   know that.  Really?  Really?

14            MR. BENNETT:  But it's my case, Judge.  They don't

15   have to put a witness on.  When I rest my case and they move

16   to strike it because I don't have evidence that they knowingly

17   violated the law --

18            THE COURT:  Do you think that Bank of America

19   seriously is going to say that they didn't know about the law?

20   That that's their defense?  Or that they didn't violate the

21   law?

22            MR. BENNETT:  They are going to say that we didn't

23   prove that they didn't know about the law.  That we are the

24   plaintiffs and the burden is ours.  That we didn't prove --

25            THE COURT:  That you didn't prove that they knew

1    about the law?  Seriously?

2           MR. BENNETT:  Yes, Judge.

3           THE COURT:  Is Bank of America going to say that?

4           MR. McFARLAND:  I will represent to the Court, Your

5    Honor, that is not our position.

6           THE COURT:  I am sure it's not.  Okay.  I am ready

7    to rule on the 30(b)(6) topics then.

8           As to the ones that you have proposed modifications

9    to, I find that those proposals are appropriate.

10          I sustain I think almost every one of your

11   objections, and specifically, and I have my list here, 2, 11,

12   13, 16 -- where is the rest of my list here?  2, 11, 13 and 16

13   are all -- your objections are all sustained to those.

14          18, let me just double-check.  18, 24 and 25.  Okay,

15   18 is -- okay, 18 is sustained, the objection is sustained.

16          24 is sustained.

17          And 25, 25 I am not even quite sure what you're

18   asking.  Every action taken or not taken by Bank of America in

19   regard to the plaintiffs that was not as Bank of America

20   intended.

21          MR. BENNETT:  Yes.  We have their witness who has

22   done the full file review.  Are they representing that there

23   was, I'm sorry, we made a mistake, this shouldn't have

24   happened?  Or are they saying that everything happened the way

25   that we insisted?

```
 1              And it's --

 2              THE COURT:  Are you saying -- are you asking them

 3    then if there is anything that they admit they made a mistake

 4    on?

 5              MR. BENNETT:  Yes, Your Honor.

 6              THE COURT:  Well, can't you just ask them that

 7    question?

 8              MR. BENNETT:  Well --

 9              THE COURT:  I mean, you're going to be going through

10    their entire file with a witness.

11              MR. BENNETT:  I am not.  You've --  I don't have a

12    file, Judge.  I don't have a file to go through.  I really

13    don't.  I don't have --

14              THE COURT:  You have the entire chronological

15    history --

16              MR. BENNETT:  I do not, Your Honor.

17              THE COURT:  You represented to me that you provided

18    that?

19              MR. RAMANA:  I have, Your Honor.  I can --

20              THE COURT:  Okay.  You tell him what the Bates

21    numbers is because he doesn't -- and if you haven't provided

22    that, I wouldn't -- that would be -- that's obviously a basic

23    thing that they would have had to produce.

24              And you're telling me that they didn't give to you

25    the chronological computer printout of every conversation they
```

1    had with these plaintiffs?

2         MR. BENNETT:  Of everything they did to process and

3    do their investigations in any chronological history at all,

4    no, Your Honor, they did not.

5         THE COURT:  Okay.  Then you tell them where it is.

6    You tell me that you have produced that?

7         MR. RAMANA:  Yes, Your Honor.

8         THE COURT:  You tell him where it is.

9         MR. RAMANA:  I will provide them the Bates numbers.

10        THE COURT:  Okay.  Of course, if you haven't

11   actually provided it, there will be sanctions.  But I am sure

12   you must have provided that because there has got to be one.

13        Now, as regards to number 25, you can ask them if

14   they admit that they made any mistakes with regard to your

15   plaintiffs.  That's fine.  That's the question.  If that's

16   what you mean, then you can ask that.

17        So --

18        MR. BENNETT:  Judge --

19        THE COURT:  Anything else?

20        MR. BENNETT:  If you recall the criticism that

21   our -- what is Bank of America's knowledge of the Metro

22   reporting format that you believed in an earlier topic was

23   narrowed.  18 has narrowed that to a very specific single

24   issue, which is the use of the XB value in the compliance

25   condition code field.

1        THE COURT:  Yeah, but you asked them what the impact

2   of this is on their credit score.

3        MR. BENNETT:  Yes, if they know.  If they say they

4   don't know --

5        THE COURT:  All right.  If you don't know -- you

6   have to answer that one.  Just say whether you know or you

7   don't know.  Okay.

8        Anything else?  All right, then I think I've ruled

9   on everything.  Your motion to compel is granted in part and

10  denied in part.

11       The motion for sanctions --

12       MR. BENNETT:  We are not asking for money sanctions,

13  punishment --

14       THE COURT:  I know what you're asking for.  I do

15  have an issue with you listed in a sort of general form some

16  of these categories of people.

17       Is there anyone else whom you're planning to call as

18  a witness who is not listed in your 26 disclosures?

19       MR. McFARLAND:  No, Your Honor.  Between the

20  26(a)(1) initial disclosures, the answers to interrogatories,

21  and that we supplemented, no.  We have identified our

22  witnesses through this week in this case.

23       THE COURT:  Okay.

24       MR. McFARLAND:  We have put everyone --

25       THE COURT:  Have you given them -- have you got a

1    complete list of the names?  Not just in terms of whether they

2    -- have you provided the specific names of your witnesses

3    rather than the category of people that you are producing to

4    testify at trial?

5              MR. McFARLAND:  We initially had categories.

6              THE COURT:  Right.

7              MR. McFARLAND:  We have given him the names of those

8    people who will testify.

9              THE COURT:  Okay.

10             MR. McFARLAND:  And I am happy to give a supplement,

11   either in an answer or a letter that says, here are the people

12   who will or may testify at trial.

13             THE COURT:  Is there anyone new on that list that he

14   hasn't already known about for some time?

15             MR. McFARLAND:  No.  We supplemented it in the past

16   ten days, Your Honor, and gave him those names.

17             THE COURT:  Okay.

18             MR. McFARLAND:  In fact, the deposition of Ms.

19   Ramirez is a week from today.

20             THE COURT:  All right.

21             MR. McFARLAND:  On the 19th.

22             THE COURT:  Okay.  Any other problem?  Then what's

23   the problem?

24             MR. BENNETT:  Well, from the -- it wasn't the last

25   ten days.  It was since we filed this motion.  When we filed

1   the motion, we had the one person.

2          THE COURT:  Okay.  What is the problem now?  You

3   have got the list.  Is there a problem still?

4          MR. BENNETT:  With respect to, no additional

5   documents the defendant -- I mean, the flip side is, if we can

6   survive a motion to strike and I am right and I am not lying

7   to you that they have not produced any of the --

8          THE COURT:  I am not saying you're lying.  I am

9   thinking that you don't know where they are that they have

10  identified.

11         MR. BENNETT:  But I have personally reviewed them at

12  length, Your Honor --

13         THE COURT:  Okay.

14         MR. BENNETT:  I didn't delegate that.

15         THE COURT:  They are going to tell you.  If you

16  think you are missing something, as I said, you are going to

17  have to meet and confer over the next few days, and you point

18  to them where they are.  If you think that there is something

19  that's not been produced that should have been produced in

20  accordance with what I have said today, then you can bring an

21  appropriate motion.

22         Otherwise, I assume that there are no documents that

23  you intend to introduce at trial that you have not previously

24  produced to the plaintiff, is that correct?

25         MR. McFARLAND:  That's correct, Your Honor.  And we

1    are going to go back in light of the hearing today --

2              THE COURT:  Yes.  And I told you to talk about those

3    other things that if there is something specific that you

4    think that you're missing, I want you all to talk about it

5    again over the next few days.  And I think that if they can

6    understand specifically what it is that you want and they have

7    not produced it, I think this counsel has made the

8    representation that, subject to them having objection

9    otherwise, they will produce it.

10             So, with whatever else that is going to be

11   supplemented in the next few days with respect to how I have

12   ruled today, then you are not going to introduce any other

13   documents in evidence, is that correct?

14             MR. McFARLAND:  With whatever supplementation we

15   make --

16             THE COURT:  In the next few days based on what I

17   have said.

18             MR. McFARLAND:  Yes, Your Honor.

19             THE COURT:  Okay.  So that's it, isn't it?

20             MR. McFARLAND:  I want to say, Your Honor, because I

21   have listened to this, we have produced over 2,000 documents

22   in this case.  We have been very mindful of our obligations

23   under the rules and tried to comport with Mr. Bennett.

24             And I would say to the Court, returning to the

25   motion for sanctions, this motion is procedurally defective,

74

1   it is substantively defective.  We should never have had to

2   respond to it.

3          I know the Court has a full schedule, but if we are

4   going to address this, I would like to be heard on this.

5          THE COURT:  I am ready to deny it.  So, do you need

6   to speak about it anymore?

7          MR. McFARLAND:  The only thing I would say, Your

8   Honor, is that we should never have had, my client should not

9   have had to incur --

10          THE COURT:  I understand.

11          MR. McFARLAND:  -- the costs and fees of responding

12   to a motion that there was not a specific meet and confer on.

13   Exhibit A to this motion that is supposedly the meet and

14   confer e-mail, it's not this case.  It's another Bank of

15   America case that I am involved in with Mr. Bennett and my

16   client.

17          And the second point is, substantively, Rule

18   37(c)(1), as this Court knows, is if information or a witness

19   is offered that hasn't been disclosed, then it will be

20   excluded.

21          THE COURT:  Yes.

22          MR. McFARLAND:  Their brief says that hasn't

23   happened yet.

24          THE COURT:  Okay.

25          MR. McFARLAND:  This is an advisory opinion.  We

1    should not have had to respond to it.

2              THE COURT:  All right, I understand.  I am not going

3    to award fees and costs.  Bank of America can afford it.

4              Is there anything else?

5              MR. BENNETT:  Judge, if we could have this meet and

6    confer where they identify the documents that they have

7    represented they have produced regarding training audits --

8              THE COURT:  I have already told that you are going

9    to have that meet and confer.

10             MR. BENNETT:  If we could have that either today or

11   on --

12             THE COURT:  Monday.

13             MR. BENNETT:  I mean, today, at least we could bring

14   to your attention --

15             THE COURT:  Do you have any problem with meeting

16   this afternoon about it?

17             MR. RAMANA:  He keeps referring to the chronological

18   list that we keep talking about --

19             MR. BENNETT:  No.

20             THE COURT:  I think he's talking about the other

21   documents that he thinks you haven't produced that you say

22   that you have produced.

23             MR. RAMANA:  We can have --

24             MR. McFARLAND:  We will meet right now, Your Honor.

25             THE COURT:  Great.

1          MR. McFARLAND:  I am sure there is either a room or

2   an office --

3          THE COURT:  There are rooms right outside the

4   courtroom you can use.  Anything else?

5          MR. BENNETT:  No, Your Honor.

6          THE COURT:  Okay.  That's it.  So, the motion for

7   sanction is denied.  I am not going to award counsel fees for

8   defending that.  The motion to compel and the crossmotion for

9   protective order, they are both granted in part and denied in

10  part.  The motion to file under seal is already granted.

11         Court stands in recess.

12         MR. McFARLAND:  Thank you, Your Honor.

13         NOTE:  The hearing concluded at 11:21 a.m.

14     ------------------------------------------------

15

16     C E R T I F I C A T E  of  T R A N S C R I P T I O N

17

18         I hereby certify that the foregoing is a true and
    accurate transcript that was typed by me from the recording
19  provided by the court.  Any errors or omissions are due to the
    inability of the undersigned to hear or understand said
20  recording.

21         Further, that I am neither counsel for, related to,
    nor employed by any of the parties to the above-styled action,
22  and that I am not financially or otherwise interested in the
    outcome of the above-styled action.

23

24                        /s/ Norman B. Linnell
                         Norman B. Linnell
25                        Court Reporter - USDC/EDVA